Fisher, Executor, *v.* Brick, Appellant.

Argued December 3, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON and JONES, JJ.

*Leonard J. Schwartz,* with him *George A. Starrels* and *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*Thomas S. Lanard,* for appellee.

OPINION BY MR. JUSTICE JONES, January 5, 1948:

The defendant appeals from a judgment entered on a jury's verdict for the plaintiff in an action of assumpsit and assigns for error the judgment and the overruling of his motion for judgment n. o. v. No motion for new trial was filed.

Not possibly could the learned court below have entered judgment n. o. v. for the defendant on the record in this case. The affidavit of defense admitted the contract of settlement, pleaded by the plaintiff, and further conceded (by failing to deny) that a certain amount was still owing by the defendant to the plaintiff under the contract albeit in a smaller sum than that averred by the plaintiff. Thus, the situation before the court below was that, admittedly, there was something due the plaintiff and the verdict was for the plaintiff. Plainly, therefore, the court could not have properly entered a judgment n. o. v. for the defendant.

Furthermore, on this appeal, the defendant's sole contention is that the plaintiff's suit was prematurely instituted. That contention he bases on an implication derived from the verdict which made it patent that the jury credited the defendant with certain payments for which the plaintiff had made no allowance. But, at no time was the question of the suit's prematurity raised at trial. Nor was that question submitted to the jury for a determination thereof on the basis of the number of payments found to have been made by the defendant to the plaintiff under the settlement agreement. And, the defendant, moreover, took no exception to the trial court's failure to submit that issue. At most, therefore, the matter of the alleged prematurity of the suit could go no further than to the timeliness of the action, and not

to the question of the defendant's liability. The pertinency of the appellant's contention in this connection would be confined, in any event, to the question of the propriety of a new trial which was neither moved for by the parties nor ordered by the trial court of its own motion, as might have been done had the court been so minded.

A trial court has 'an "immemorial right to grant a new trial, whenever, in its opinion, the justice of the particular case so requires": *March v. Philadelphia & West Chester Traction Co.,* 285 Pa. 413, 416, 132 A. 355. Neither the Act of April 22, 1905, P. L. 286, authorizing the entry of judgments n. o. v., nor its re-enactment and enlargement by the Act of April 9, 1925, P. L. 221, 12 PS § 681, took away or impaired that right which exists even where neither party to the record has filed a motion for a new trial: see *Granato v. Wise,* 94 Pa. Superior Ct. 346, 348, where Judge (now Justice) LINN said,—"In circumstances easily imaginable it would be the duty of the court in compliance with the statute [the N. O. V. Act of 1905] to grant a new trial, even though—as in this case—neither party specifically requested it." See also *Harkai v. Pisano,* 88 Pa. Superior Ct. 475, 479. Inasmuch, therefore, as a motion for a new trial was the only appropriate after-verdict procedural step the defendant could have taken in this case and inasmuch as the learned court below did not award a new trial, when refusing the defendant's motion for judgment n. o. v., we will treat the lower court's action as tantamount to a refusal of a new trial and review the record on that basis.

The undisputed facts show that as of May 31, 1943, Edward Fisher (the plaintiff's decedent) and Matthew Brick, the defendant, mutually dissolved their partnership business by an agreement in writing dated June 23, 1943. Therein, Brick agreed to purchase Fisher's interest in the business for a certain fixed sum whereof approximately three-sevenths was paid upon the sign-

ing of the agreement. The balance of the purchase price (viz., $40,000), Brick agreed to pay in weekly sums of $200, beginning July 1, 1943; and, in that connection, the agreement further provided that "In the event of default in any one of the weekly payments by [Brick] for a period of six months or more, then in such event, the balance then due shall become immediately due and payable to [Fisher]".

On November 12, 1946, Morris Fisher, executor of the will of Edward Fisher, who had died in December of 1945, instituted the present suit against Brick for $11,-200, the averred balance due under the agreement on account of the purchase price. During the period from July 1, 1943, to November 12, 1946, one hundred and seventy-six weekly installments were due. As the total weekly payments conceded by the plaintiff to have been made by the defendant aggregated $28,800, Brick was manifestly in default in his weekly payments for a period of thirty-two weeks or more than six months. On the other hand, in his affidavit of defense, Brick alleged that Fisher had failed to give him credit for certain payments made by him, specifically, a payment of $2,-264.17 made to the Internal Revenue Bureau on Fisher's behalf on June 4, 1943 (the receipt was dated June 23, 1943), a check for $135.82 sent to Fisher and a one-cent bookkeeping error (for a total of $2,400) and a further payment of $5,000 made on December 31, 1943. This latter amount, the plaintiff averred was paid by Brick to Fisher on account of an indebtedness for a personal loan, a matter entirely separate and apart from the partnership settlement.

The learned trial judge submitted these particular issues of fact to the jury in three questions whose form was expressly approved by counsel for both sides. According to the jury's answers to the questions so submitted, the defendant was entitled to a credit on the balance of the purchase price for the payments above-mentioned, totalling $2,400, but not for the $5,000 pay-

ment; and, the jury consonantly returned a general verdict for the plaintiff in the sum of $8,800.

From the fact that the plaintiff had not given the defendant credit for the $2,400, paid in the manner as above stated, the appellant now argues that, by virtue of the credit to which he was entitled (the same being the equivalent of twelve $200 weekly payments), he was not, therefore, in default at the time the suit was instituted, on account of the weekly payments, for a period of six months or more. That point constitutes the whole of the defendant's complaint on this appeal,—a matter raised for the first time after verdict.

The opinion filed for the court en banc states that "Defendant contends . . . the suit was prematurely brought. Neither in the pleadings nor at the trial, however, did the defendant press any such contention." Thus, it was not until after the verdict was rendered by the jury, following a charge to which the defendant took no exception, that he attempted to assert for the first time a personal privilege under the settlement agreement with respect to being sued for his liability. In the light of the undisputed circumstances, the defendant may be justly considered to have waived any question as to the prematurity of the suit. And, at any rate, we will not review a case on a theory other than that upon which it was tried and passed upon in the court below: *Saxman v. McCormick*, 278 Pa. 268, 273, 122 A. 296, and cases there cited; *Morrett v. Fire Association of Philadelphia*, 265 Pa. 9, 11-12, 108 A. 171, and cases there cited; *Quinter v. Quinter*, 261 Pa. 195, 198, 104 A. 580, and cases there cited; *Rotograph Company v. Cressman*, 41 Pa. Superior Ct. 14, 17-18. An appellate court does not sit to review questions that were neither raised, tried nor considered in the trial court: *Huffman Estate (No. 3)*, 349 Pa. 59, 62, 36 A. 2d 640; *Henry v. Zurflieh*, 203 Pa. 440, 451, 53 A. 243.

The assignments of error are overruled.

Judgment affirmed.