Jedwabny, Appellant, *v.* Philadelphia Transportation Company.

Argued April 26, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused November 1, 1957.

*Herman Moskowitz,* for appellants.

*James Conwell Welsh,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, October 10, 1957:

The principal question on these appeals is whether the granting of a new trial because of the trial judge's failure to make certain that one of the litigants had full knowledge of an existing conflict of interest in his attorney's representation of him constituted an abuse of discretion.

Three plaintiffs, one of whom was the owner and driver of an automobile and the other two his guest passengers, sued the Philadelphia Transportation Company for damages for injuries sustained in a collision between the automobile and a street car of the Transportation Company. The defendant joined the automobile owner and driver as an additional defendant.

At trial, the jury by special findings found both the motorman of the street car and the driver of the automobile guilty of proximately causative negligence. Verdicts were accordingly rendered against the defendant and the additional defendant jointly for the sums assessed by the jury, viz., $100 for the one passenger plaintiff and $10,500 for the other. In the case of the automobile owner as plaintiff and the Transportation Company defendant, a verdict was returned for the defendant. The Transportation Company filed motions for a new trial and for judgments n.o.v.; the n.o.v. motions were withdrawn at argument of the new trial motion. Neither the passenger plaintiffs nor the owner and driver of the automobile, all of whom were represented throughout by the same attorney, filed any after-verdict motions although, as already appears, the owner of the automobile stood jointly liable with the Transportation Company for the money verdicts in favor of the passenger plaintiffs.

The court below granted a new trial solely for the reason set forth in the opinion accompanying the order

as follows: "We think it was the duty of the trial judge to explain the situation to the additional defendant, a thing that was not done. It is not fatal to a trial that he not be represented, but he should be given the chance to make an informed choice. With a heavy joint verdict against him now, he may not even know his rights relative to a request for a new trial or an appeal."

The instant appeal does not necessarily search the basic ethical question whether a conflict of interest, such as this record presents, serves, as a matter of law, to disqualify an attorney from representing concurrently both of the conflicting interests. The question here is simply whether the trial judge was guilty of a palpable abuse of discretion in awarding a new trial for the reason assigned.

In *Fisher, Executor v. Brick,* 358 Pa. 260, 262, 56 A. 2d 213, we recognized that "A trial court has an 'immemorial right to grant a new trial, whenever, in its opinion, the justice of the particular case so requires': March v. Philadelphia & West Chester Traction Co., 285 Pa. 413, 416, 132 A. 355." The *Brick* case also recognized that a trial court may of its own motion award a new trial even where neither party so moves. A court's exercise of such power is, of course, reviewable just as is the exercise of a legal discretion in any instance. We must look, therefore, to the circumstances which motivated the court's action in the present instance.

The situation that obtained upon the failure of the attorney to move for the additional defendant's relief from liability for the $10,500 verdict against him in favor of another client of the same attorney, also party to the same record, created in the mind of the trial judge a consciousness that he should have made certain by personal interrogation of the additional defendant at the time of the rendition of the verdicts or,

at least, before the time for moving for a new trial had expired that the particular litigant had been fully informed and had an intelligent and complete understanding of his then legal status, and should also have ascertained whether the litigant desired to move for a new trial.

Canon 6 of the Canons of Professional Ethics, adopted by the American Bar Association on September 30, 1937, and by the Pennsylvania Bar Association on January 7, 1938, provides in part that "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose."[1] The full disclosure required by this canon contemplates that the possibly adverse effect of the conflict be fully explained by the attorney to the client to be affected and by him thoroughly understood. See opinion No. 160 of the Committee on Professional Ethics of the American Bar Association.

The foregoing canon applies to cases where the circumstances are such that possibly conflicting interests may permissibly be represented by the same attorney. But, manifestly, there are instances where the conflicts of interest are so critically adverse as not to admit of one attorney's representing both sides. Such is the situation which this record presents. No one could conscionably contend that the same attorney may represent both the plaintiff and defendant in an adversary action. Yet, that is what is being done in this case. It was the attorney's duty to protect the $10,-

---

[1] Canon 6 was first adopted by the American Bar Association on August 27, 1908, see Drinker, Legal Ethics, p. 309, and by the Pennsylvania Bar Association sometime before 1914, Idem, p. 25.

500 verdict of his plaintiff client against the additional defendant while it was his duty at the same time to relieve from liability the additional defendant whose representation the attorney had originally undertaken for the purpose of obtaining for him a recovery from the Transportation Company. Obviously, the attorney cannot serve the opposed interests of his two clients fully and faithfully. The ancient rule against one's attempting to serve two masters interposes.

The ethical conception, appropriate to the instant circumstances, was luminously expressed in *Bossler v. Wilson,* 65 D. & C. 164, 171 (1948), which involved a procedural situation materially akin to the present. It was there said: "Now as to the first stated fact necessitating a new trial as to *both* defendants, namely, the same attorney appearing for both the plaintiff and the additional defendant. It must be borne in mind that the original defendant was a plaintiff as to the additional defendant. No finding rendered under such circumstances can be allowed to stand and to mature into a judgment against the additional defendant, a verdict rendered in a trial wherein the attorney represented the plaintiff in the presentation of her case and the additional defendant in the presentation of his defense to the claims of both plaintiff and original defendant. The interests of these parties were adverse. No attorney can serve two opposing litigants any more so than one man can serve two masters. Upon this point the law of the Commonwealth is in harmony with Holy Writ", citing in a footnote the scriptural references.

The conclusion naturally follows that, in the undisputed situation here present, the action of the learned court below in granting a new trial not only did not constitute an abuse of discretion but was affirmatively proper. As the brief for the appellee reminds us, the additional defendant with a large joint verdict against

him, having been awarded a new trial, now asks us on appeal to reverse the action of the court below to the end that the verdict against him may be reinstated and judgment thereon entered against him. The anomaly could hardly be more glaring.

Order affirmed.

DISSENTING OPINION BY MR. JUSTICE BELL:

I disagree with the Court's order and opinion because they are in my judgment both unrealistic and unfair. The Court admits that it is not necessary for a defendant to be represented by an attorney; it is sufficient if he has an opportunity to employ one, and in a case like this, to make "an informed choice". There is no decision, rule, principle or canon that requires the trial Judge under such circumstances to be the informant—only a moron would be unconversant with or ignorant of the situation and the penalty with which the driver of the automobile was and is confronted. Canon 6 of Professional Ethics is wise and salutary if applied as a general rule, but virtually every rule is subject to some exception.*

A joint trial of two or several suits arising out of a collision between two or three automobiles or trolleys was designed, not to cause hardship or injustice but to expedite and promote justice. Such trials have frequently raised factual and legal questions and prob-

---

* This is an almost universally recognized truism—indeed it is exemplified in the majority opinion which quotes Canon 6 and the Scriptures to support the conclusion that Atkinson must have one lawyer in his capacity as plaintiff and another lawyer to represent him as defendant, and then admits that *one* lawyer could represent Atkinson in his capacity as plaintiff and as defendant if Atkinson were informed of his rights, risks and conflicting interests.

lems which have vexed and perplexed juries, trial courts and appellate Courts alike, and have at times resulted in a miscarriage of justice. Cf. *Ratcliff v. Myers,* 382 Pa. 196, 113 A. 2d 558; *Byers v. Vargo,* 389 Pa. 365, 133 A. 2d 163, *Pascarella v. Pittsburgh Railways Co.,* 389 Pa. 8, 131 A. 2d 445.

For example, a *poor* man owns and is a passenger in an automobile which is driven by his wife. There is some evidence that it was being driven under his direction although he denies this. A collision occurs with another automobile owned and driven under the same circumstances. Each family engages a lawyer and each is convinced that the other driver is solely at fault. Cross suits are brought and each plaintiff is joined as a defendant in each suit. The suits are tried together and each lawyer explains to his client the legal risks and possibilities. Each family tells their attorney that they cannot afford to employ more than one lawyer. Why should the law or any canon compel each claimant to employ two lawyers—a total of six or eight lawyers in this simple case? Isn't such a requirement impractical, unjust and ridiculous?

Notwithstanding the high motive which prompted the lower Court to grant a new trial, I believe that the grant of a new trial was unfair to plaintiffs Jedwabny and Stachowicz (the verdict winners), and for this reason, as well as for the above mentioned reasons, was a manifest abuse of discretion.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The action of the learned trial Judge in this case, in ordering a new trial when obviously it is not necessary, represents to me either a flagrant usurpation of judicial authority or an incredible indulgence of a

despotic whimsicality. In either event it accomplishes an injustice upon two persons who have fairly and squarely won a verdict in a trial which admittedly is free of error, and they should not therefore be compelled to face the shot and shell, worry, expense, suspense and agony of another courtroom battle.

Here are the facts. Leon Jedwabny and Peter Stachowicz were injured in an accident when the automobile in which they were riding as guests of Charles W. Atkinson, collided with a street car on 36th Street in Philadelphia. These persons and Atkinson brought a lawsuit against the Philadelphia Transportation Company, the passengers claiming damages for personal injuries and Atkinson seeking reimbursement for repairs made necessary to his car. The railways company denied liability and charged that Atkinson was either wholly or jointly responsible with the railway company for the happening of the accident. Accordingly it forced Atkinson into the case in the extra role of additional defendant.

On October 1, 1956, the cases came on for trial in Court of Common Pleas No. 6 of Philadelphia County. Attorney Herman Moskowitz represented Jedwabny, Stachowicz and Atkinson as Plaintiffs, and Atkinson in his capacity as additional defendant. Attorney James C. Welsh represented the Philadelphia Transportation Company. At the very outset of the trial, the trial Judge made the following announcement in open court: "In talking with counsel, it appears that Charles W. Atkinson, one of the original plaintiffs, has been drawn in by the defendant P.T.C. as an additional defendant. Therefore, in effect he appears on both sides. Counsel has explained that he has no separate counsel, for the reason that his claim is limited to property damage, to his automobile, and no personal injuries. That being so, since that would be all that

he would recover if he recovers anything, I approve this situation of appearing without separate counsel. But Mr. Moskowitz, since he was originally your client, I think you may properly look out for his interests." To this Mr. Moskowitz replied: "Very well, Sir."

It was Atkinson's contention that he was free of negligence and that the accident was due entirely to the fault of the street car motorman. The plaintiffs Jedwabny and Stachowicz likewise maintained that the motorman alone caused the accident. Thus, it is to be noted at once that Atkinson's position as additional defendant did not differ in any way from his position as plaintiff. Hence, his attorney, Mr. Moskowitz, did not in any way represent conflicting interests. It was Moskowitz's contention throughout the trial that his clients suffered damages because of the sole negligence of the railway company. It was his contention all the time that Atkinson was in no way responsible for the accident.

Despite what this Court has said in its Majority Opinion, to which I will refer later, there was nothing at all strange about Mr. Moskowitz's status in the case. It often happens in our courts that an attorney files a suit against a certain defendant, and the defendant turns around and files a countersuit against the plaintiff. When such a case comes on for trial the attorney represents his client, both as plaintiff and as defendant. It would be absurd to assume that in such a situation the client should have two attorneys, one representing him as plaintiff and the other representing him as defendant.

The trial Judge in the case at bar, therefore, properly announced that it was perfectly in order for Mr. Moskowitz to represent Atkinson as plaintiff and as additional defendant. After the trial, however, the

trial Judge changed his mind. He found an incongruity in Mr. Moskowitz's position, but unfortunately expressed that incongruity with an incongruity of his own. He said that a new trial was necessary because of "an intellectual rather than a personal situation," whatever that may be.

He said further that he had failed in his duty "to explain the situation to the additional defendant, a thing that was not done." What was the *thing* that was not done?

And what did he mean by the statement which followed, namely: "It is not fatal to a trial that he not be represented, but he should be given the chance to make an informed choice"? But Atkinson *was* represented. He was not only represented by counsel but he was represented, in the words of the trial Judge himself, by counsel who is "entirely reputable and high-minded."

In ordering a new trial the trial Judge indicated he was doing this for Atkinson's benefit. But Atkinson does not want a new trial. He had had his day in court. The jury returned a verdict against him and he is willing to let matters rest as they are. There are some people in life who are willing to face realities and they experience no gratification in chasing the evanescent and elusive rainbow. Atkinson apparently finds more peace of mind in accepting the status quo than in making an effort which might result in an even greater loss. Accordingly he is satisfied not to have a new trial. It is for that reason that he did not make a motion for a new trial. It is for that reason that he is today opposed to a new trial. But the trial Judge, in his Olympian wisdom, declares that Atkinson has no right to be satisfied without a new trial and that, therefore, though the Heavens fall, Atkinson shall have a new trial!

But in the meantime what is happening to the innocent bystanders, Jedwabny and Stachowicz? They are entirely content with the result of the trial. They have won their verdict. No one charges them with impropriety. Why should they be subjected to the turmoil, the expense, the loss of time, the worry and the agony which accompany a trial—with the possibility of drowning in a river they have already crossed.

The trial Judge is magnanimous in stating that he should "bear the blame for allowing this situation to arise," but his magnanimity does not help Atkinson in whose behalf it is expressed. Atkinson can well afford not to have a blessing of this kind. The trial Judge's magnanimity accomplishes the startling paradox that it injures the person it is intended to help and confers a boon on the party in the lawsuit that has no right to be helped, that is, the railway company. The railway company lost the trial on all counts and cannot point to a single error which would entitle it to a new trial. The trial Judge has admitted as much. He said in his opinion that the defendant "isn't affected" by the "situation" which impelled him to order a new trial. The railway company "isn't affected," yet the trial Judge orders a new trial which will benefit *only* the railway company.

In contemplating so bizarre an arrangement one might wish that the trial Judge had reflected on the observation made by the noted author Curtis Bok in his excellent book, "I Too, Nicodemus," namely: "There is no plea to be made except to keep the law personal. Those in its high places must be careful lest they forget people and remember only the machinery that governs them. Some do forget."* Were Jed-

---

* "I Too, Nicodemus," page 327, published by Alfred A. Knopf, New York, 1946.

wabny and Stachowicz forgotten? Was Atkinson forgotten as a human being and regarded only as an insensate cog to be crushed in a machine?

The trial Judge says that Atkinson must have a new trial because "with a heavy joint verdict against him now, he may not even know his rights relative to a request for a new trial or an appeal." This observation comes close to being presumptuous. Why should the trial Judge presume that Atkinson may not know his rights relative to a new trial? He has an "entirely reputable and high-minded lawyer", the lawyer he engaged as far back as March 24, 1954, only a week after he was brought into the case as an additional defendant. Mr. Moskowitz thus represented him for two and one-half years prior to the trial, throughout the trial, and after the trial. Atkinson never said that he was not satisfied with his attorney but the trial Judge makes bold to say that the client "may not even know his rights relative to a request for a new trial." This is a reflection upon Atkinson's attorney which is unwarranted, and unjustified and, since the trial Judge has already gone on record to the effect that he regards Mr. Moskowitz as "entirely reputable and high-minded," the observation falls into the category of an abusive non sequitur.

It is to be noted that throughout the trial the railway company did not once complain of the "intellectual" situation with which the trial Judge so unnecessarily torments himself. In explaining that "intellectual" situation the trial Judge said: "In that light it is clear that the pressure of conflicting interests is less in a case like this one than in one where the additional defendant's claim as a plaintiff is substantial, for in the latter situation his counsel would naturally prefer to press the claim as plaintiff and to ask the Court to clear him of a defending representation."

I am afraid that I do not grasp the learned judge's reasoning here. Nor am I able to follow him when he says: "At the beginning of the trial it was called to the trial judge's attention that the driver had no counsel to guide him in his capacity as additional defendant, and everyone in the case got the idea that because he had only a limited claim for property damage he didn't need a lawyer."

Must we repeat that Atkinson *did* have a lawyer? That he had him from the time the railway company pulled him in as an additional defendant? That he had this lawyer not for a day, but for two and one-half years prior to the trial?

The trial Judge's reason for ordering the new trial in this case must take its place in the law books as one of the most extraordinary on record. He ordered a new trial because in the laboratory of his conscientious imagination he pictured a fault which does not exist. He ordered a new trial for the benefit of a party which repulses it. He ordered a new trial which benefits a party not entitled to it. He ordered a new trial which can find no precedent in the books, can find no authority to support it, and can find no principle in jurisprudence which gives it substantiation. He offers legal reasoning which ignores equity and fairness.

The stultification of common sense and the corroding of common justice by the process of forced legal reasoning pins no rose on the robe of the law.

This Court has often said that even where the trial court commits an error which does not prejudice any one's rights, it is improper to order a new trial. But here it affirms the imposition of a new trial on an "error" which is not only not prejudicial but has no existence except in the realm of a technical fantasia. The trial, which lasted four days, was prodigally devoid of all those faults which a lawyer, in zealous retro-

spect, sees in a record when an adverse verdict makes him yearn for another opportunity to raise the flag of victory to the top of the mast of his fervent hopes.

The railway company attorney, in filing his motion for a new trial, could only advance the stereotyped reasons that the verdict was against the evidence, it was against the weight of the evidence, it was against the law, and it was against the charge of the Court. Of course, his real reason was that it was against the Philadelphia Transportation Company which he represented!

Here was a trial, of which unfortunately there are too few, which ran its course as a ship which crosses the ocean without having encountered any of the usual difficulties of storms, headwinds, mechanical breakdowns, and passengers' complaints. The trial entered the port of a blemishless verdict and the passengers were ready to disembark when the Judge stopped everyone at the gangplank and ordered that the voyage he repeated because, in his mind, he saw a defect: one of the passengers had not been informed that he could make a formal complaint about something he had no desire to complain about. The passenger was thoroughly satisfied, he had arrived at a destination which suited him. Whether it was the one he had originally hoped for did not matter to him. He was content. He did not want to cross the ocean again. But the self-appointed captain of his fate decreed that he should make the trip again whether he liked it or not. He should take to the ocean again even though his voyage could cast him on the shores of a land of brambles infinitely worse to him than the one in which he now finds himself.

And this Court, instead of countermanding so erratic an edict which represents so obvious an abuse of judicial discretion, affirms the edict and thus inferen-

tially invites other judges to order ships of litigation to cross and recross the ocean without reason and purpose and lacking in the elementary equipment of the compass of *stare decisis.*

The Majority Opinion, in fact, practically advances the idea that every litigant who loses a case must complain and that every defeated party in a lawsuit must demand a new trial. If such a philosophy were to prevail, it would mean that every first trial must be regarded as merely a dress rehearsal or a "dry run."

In supporting the trial Judge's decision, the Majority Opinion interposes the biblical injunction that a man may not serve two masters. The allusion is interesting but the application is not apparent. Wherein did Mr. Moskowitz serve two masters? From the very beginning of the controversy he had but one master and but one adversary, and that alignment remained constant throughout the entire litigation. The original complaint in this case was filed by three plaintiffs: Leon Jedwabny, Peter Stachowicz, and Charles Atkinson. The complaint aimed at but one defendant, the Philadelphia Transportation Company. The Philadelphia Transportation Company, for reasons of its own (entirely proper, of course) forced Atkinson into the status of an additional defendant, but it did not and could not change his position that the railway company was solely responsible for the accident. Throughout the whole course of the litigation the issue remained as it was at the very beginning, namely, Jedwabny, Stachowicz and Atkinson versus the Philadelphia Transportation Company. No maneuvering by the defendant company could change that factual line-up. From the very beginning, and throughout the trial, the Philadelphia Transportation Company remained the opposition at which the three plaintiffs aimed, and against which they trained their guns. The action of

the railway company in making Atkinson an additional defendant did not transform him from Moskowitz's master into Moskowitz's enemy.

If the Majority would hold to the doctrine it seems here to advocate, it would mean that a defendant could always throw havoc into the ranks of multiple plaintiffs by making one of the plaintiffs an additional defendant and require him to hire another lawyer to represent him in that additional capacity. Thus the plaintiff, who, against his will, has been made an additional defendant, would need to go before the court and jury with two separate and antagonistic lawyers. The one representing him as plaintiff would portray him as a Dr. Jekyll in his role as plaintiff but as Mr. Hyde in his role as additional defendant! The lawyer representing him as additional defendant would portray him as Dr. Jekyll in his role as additional defendant but as Mr. Hyde in his role of plaintiff!

The Majority Opinion sees something "glaring" in the fact that Atkinson asks for a reversal of the order granting a new trial. Why should it be glaring? Why should Atkinson uncomplainingly accept a supposed beneficence which could turn out to be a trap? Why should he smile and bow gratefully for being thrown into the lion's den of another trial which might result in a mangling verdict against him of $20,000 instead of $10,000? For the Majority to see something sinister and conspiratorial in this man's desire to be let alone is to see something which is not in the record, is not charged by anyone, and is, therefore, I am constrained to say, ungracious and gratuitous.

In supporting the trial Judge's action, the Majority quotes: "A trial court has an 'immemorial right to grant a new trial, whenever, in its opinion, the justice of the particular case so requires,'" citing *Fisher, Executor, v. Brick,* 358 Pa. 260, 262. This is always a

convenient quotation when an appellate court wants to affirm a trial Judge's decision. It, however, does not happen to be in accord with more recent decisions of this Court. In *Carroll v. Pittsburgh,* 368 Pa. 436, 447, the trial judge ordered a new trial in the "interests of justice", but this Court reversed and said it was not enough to order a new trial in the interests of justice. Something more precise had to be shown. Specifically it said: "An examination of the present record discloses that no specific exceptions to any part of the charge were taken by plaintiffs' counsel, nor does any substantial error appear therein or in the admission or rejection of evidence." An examination of the record in this case reveals no exceptions with regard to the Court's charge, the introduction or exclusion of evidence, the lawyer's summations, or the jury's conduct. The Trial Judge does not even say that the "justice of the case" requires a new trial. Nor does he say that a new trial will effect a justice which was denied in the first trial.

Granting a new trial here does accomplish one specific object: it erects a trestle on which the defendant railway company may pass over an otherwise impassable gulf—from res adjudicata to another chance, to which, according to the unrefuted record, it is not entitled.

Affirming a new trial here, it must be repeated to the point of satiety, saturation, and boresome reiteration, gives to a person, under the guise of helping him, a new trial which he does not want.

Ordering a new trial here forces upon two unoffending, innocent persons a new trial which can do them incalculable harm.

In his interesting and absorbing book, "I Too, Nicodemus," from which I have already quoted, the author Curtis Bok says: ". . . the secret of a judge's work is

that ninety-nine percent of it is with trivial matters, and that none of them will shake the cosmos very much. But they are apt to shake the litigants gravely." The order in this case has shaken the litigants quite gravely. And the cause of justice even more so.