## Pittsburgh and New England Trucking Company v. Reserve Insurance Company

*James R. Mollica, Jr.*, for plaintiff.
*Avrum Levicoff*, for defendant.
*W. Arch Irvin, Jr.*, and *Herman C. Kimpel*, for additional defendant.

WETTICK, *J.*, July 28, 1978—On May 22, 1971, a tractor-trailer owned by James L. Bennett, d/b/a J-M Transfer Company (hereinafter referred to as

"Bennett") and leased to Pittsburgh and New England Trucking Company (hereinafter referred to as "PNE") was involved in a collision in Weirton, West Virginia, with a motor bus operated by Ernest Nemeth. At the time of the accident, PNE was covered by two policies of liability insurance. A policy issued by Reserve Insurance Company covered occurrences arising in the course of PNE's transacting business as a motor carrier and a policy issued by Medallion Insurance Company covered occurrences in which the tractor-trailer which PNE leased was not being used in course of PNE's motor carrier business.

On the basis of its preliminary investigation, which included receiving a statement from Bennett that the tractor-trailer was being operated on Bennett's behalf at the time of the accident, PNE looked to Medallion to provide its defense in the litigation which Nemeth instituted in the West Virginia Courts against PNE, Bennett and the driver.[1] Medallion retained attorney James Ewing to represent the interests of PNE and Bennett.

The Medallion policy had a maximum limit of $100,000. Prior to trial, Ewing contacted PNE to determine whether PNE would contribute an additional $25,000 to settle the action. PNE then contacted attorney Harry John Zimmer, a partner in the law firm of Meyer, Darragh, Buckler, Bebenek and Eck (hereinafter referred to as "the Meyer firm") for legal advice as to the advisability of making this contribution for the settlement of the action.

According to Zimmer's testimony at his December 27, 1977, deposition, on December 1, 1975,

---

1. The driver was never served.

which was the Sunday of the week on which the case was scheduled for trial, Zimmer met with Ewing to discuss the settlement proposal. During the course of the discussion, Zimmer reviewed Ewing's file and discovered that Bennett would be testifying that at the time of the accident the tractor-trailer was being operated on PNE's behalf, and not on behalf of Bennett. This testimony (which contradicted Bennett's prior statements) would, of course, increase the likelihood that PNE would be liable for the injuries which Nemeth sustained and also, if correct, would bring the accident within the coverage of the Reserve insurance policy. Zimmer, according to his testimony, immediately made Ewing aware of the conflict of interest. He requested Ewing to seek a continuance on the ground that Ewing could not represent the interests of both Bennett and PNE because each claimed that the driver was acting on behalf of the other. Also he instructed PNE to notify Reserve to assume responsibility for the defense of the case.

The West Virginia Court denied Ewing's request to continue the case and Reserve took no steps to assume responsibility for the defense of the case. On December 2, 1975, the trial began and on December 5, 1975, the jury returned a verdict against Bennett and PNE in the amount of $485,000.

Zimmer was present in the courtroom with a representative from PNE for most of the trial. He was aware that Bennett's testimony was presented to the jury that the driver was operating the tractor-trailer on behalf of PNE at the time of the accident and that Ewing deliberately chose not to contradict this testimony by calling PNE's investigator who had previously obtained a statement from Bennett that the driver was operating the vehicle on behalf

of Bennett. In his deposition, Zimmer testified that he chose not to appear of record as trial counsel for PNE because he believed that more active participation in the litigation would be ineffective and might preclude PNE from proceeding against Reserve, Medallion or Ewing in the event that the jury returned a verdict against PNE.

PNE instituted the present action against Reserve to recover the money paid to satisfy the Nemeth judgment, together with costs and other expenses incurred in trial, post-trial and appellate efforts, plus consequential and punitive damages. Recovery is sought on the grounds that the contracts of insurance between PNE and Reserve require Reserve to indemnify and defend PNE with respect to claims and/or lawsuits arising out of the May 22, 1971, collision and that PNE is entitled to be fully compensated for damages incurred because of Reserve's wrongful and intentional breach of its contractual obligations. Reserve defends on the grounds that (a) its policy did not cover the May 22, 1971, accident because at the time of the accident the tractor-trailer was not being operated on behalf of PNE and (b) PNE failed to give Reserve timely and adequate information regarding the May 22, 1971, accident and subsequent litigation arising out of this accident.

Reserve joined several additional defendants, including the Meyer firm. In its complaint against the Meyer firm, Reserve alleges that on May 22, 1971, or soon thereafter, the Meyer firm was retained to represent PNE regarding the handling of the claims arising from the May 22, 1971, collision; that in October 1974 the Meyer firm was aware that the interests of Bennett were adverse to the interests of PNE and did not act promptly to protect

PNE; that the Meyer firm was given the opportunity to appear of record and participate in the West Virginia litigation on behalf of PNE and failed to do so even though it knew that Ewing was failing to produce evidence that would have exonerated PNE from liability for the Nemeth accident; that the Meyer firm failed to notify Reserve that the Nemeth suit was instituted and that facts were being alleged which might involve the coverage of Reserve's policies; and that the verdict against PNE was the result of the negligence of the Meyer firm in failing to keep current with the developments in the Nemeth litigation, in failing to take steps to resolve the Ewing conflict of interest, in failing to appear as trial counsel for PNE and in allowing the Nemeth litigation to proceed to trial with Ewing representing all defendants. Reserve contends that a verdict against PNE was rendered because of the negligence of the Meyer firm and that the Meyer firm is therefore either solely liable, liable over or jointly liable for any amount found to be due and owing in this action.

In its answer, the Meyer firm avers that it did not become involved in the litigation until late October 1974; that it did not advise PNE concerning the litigation until November 1974; that it did not appear of record or participate in the trial as there was insufficient time to properly prepare the case for trial; that Ewing ignored advice relative to defending the action; and that it was not retained to represent any of the defendants in the Nemeth litigation for any purpose other than to advise PNE relative to any contribution to be made by that company pursuant to a settlement.

In its lawsuit against Reserve, PNE is represented by the Meyer firm. Reserve has filed a mo-

tion to disqualify the Meyer firm from serving as trial counsel for PNE on the grounds (1) that Zimmer will be called upon to testify and (2) that the Meyer firm has interests which are adverse to those of PNE.

## I.

Reserve contends that the Meyer firm must be disqualified as counsel for plaintiff because Zimmer, a partner in the Meyer firm, will be a material witness in the trial of this action. Disciplinary Rule 5-102 governs withdrawal of counsel when a lawyer becomes a witness.[2] D.R. 5-102(A) provides that if a lawyer after undertaking employment learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm shall not continue representation in the trial. In the present case, the Meyer firm contends that it has no intention of calling Zimmer or other members of the law firm as witnesses at the trial of this action. Moreover, from a reading of Zimmer's deposition, it is not obvious to this court that Zimmer ought to be called as a witness on behalf of PNE. Consequently, the provisions of D.R. 5-102(A) do not support Reserve's motion to disqualify the Meyer firm as counsel.

D.R. 5-102(B) provides that when a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his

2. In this opinion, no consideration is given to Disciplinary Rule 5-101(B) because the record does not establish that it was known to the Meyer firm that Zimmer ought to be called as a witness to provide any testimony as to a contested matter prior to the Meyer firm's accepting employment in this litigation.

client, he may continue the representation "until it is apparent that his testimony is or may be prejudicial to his client." This court is advised by Reserve that it intends to call Zimmer as a witness. There is no indication at this stage of the proceedings, however, that PNE wishes to dispute any testimony which Zimmer may offer. From a review of the pleadings and Zimmer's deposition, it would appear that PNE accepts Zimmer's testimony and contends that the facts as outlined by Zimmer do not constitute a defense to an action under the insurance policy. Thus, it is not apparent that Zimmer's testimony will be prejudicial to PNE and consequently the provisions of D.R. 5-102 do not at this time constitute a basis for removing the Meyer firm from representing PNE in this litigation.

## II.

Reserve also seeks to disqualify the Meyer firm on the ground that its interests in this litigation as a third party defendant conflict with PNE's interests as a plaintiff.

The conflict arises because PNE has instituted the present lawsuit against Reserve to be compensated for losses from the Nemeth litigation and it obviously makes no difference to PNE whether reimbursement for these losses is provided by Reserve on the ground that the insurance policy covers this accident or by additional defendants on the ground that they failed to take appropriate steps to either defend the Nemeth action or to bring Reserve into the Nemeth litigation at an appropriate time. The Meyer firm, on the other hand, has a personal interest in establishing that it was not guilty of negligently failing to protect PNE's interests.

Disciplinary Rule 5-101(A) covers the issue of disqualification of an attorney on the ground that his or her personal interests may impair the exercise of his or her professional judgment,[3] on behalf of the client. This rule provides: "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

## A.

The Meyer firm questions the standing of Reserve to file a motion to disqualify the Meyer firm from representing PNE on the ground that the exercise of the Meyer firm's professional judgment on PNE's behalf may be affected by its own personal interests. The Meyer firm points out that Reserve filed this motion only after the Meyer firm filed a motion to produce documents which Reserve was unwilling to provide.

We assume that Reserve filed its motion to disqualify in order to promote its interests. If the only apparent interest were to weaken PNE's case by obtaining the removal of counsel whom PNE selected, we would deny the motion to disqualify on the ground of lack of standing. However, Reserve has other interests which may be furthered by disqualifying the Meyer firm that are not inconsistent with PNE's interests.

---

3. Disciplinary Rule 5-105, which governs continued employment when interests of another client may impair the independent, professional judgment of an attorney is inapplicable, because in these proceedings the Meyer firm is represented by other counsel.

First, if the interests of the Meyer firm and PNE are so critically adverse that it would be impossible for the Meyer firm to exercise independent professional judgment on Reserve's behalf, any judgment in Reserve's favor might be overturned. See Jedwabny v. Philadephia Transportation Company, 390 Pa. 231, 135 A. 2d 252 (1957); Allen v. Duignan, 191 Pa. Superior Ct. 608, 159 A. 2d 21 (1960). Thus, Reserve has an interest in bringing to the court's attention a potential conflict in order to avoid having a favorable decision overturned on the ground that the Meyer firm was incapable of representing PNE's interests.

Second, where litigation involves several parties, a party may have an interest in having the counsel representing the other parties take steps to promote their clients' best interests. For example, if A (an injured passenger) sues B (an allegedly negligent driver) who joins C (a doctor who provided medical treatment for A's injuries in an allegedly negligent manner) and if A's counsel—because C is his wife—disregards evidence suggesting that C's negligence contributed to A's injuries, cooperates with C's counsel to build a case against B while refusing to cooperate with B's counsel to build a case against C and seeks no contribution from C in settlement discussions, it is very likely that A's recovery from B will be greater than it would have been if A's counsel had pursued claims against both B and C in furtherance of his client's best interests. Thus where, as in the present case, a party claims that counsel for an adverse party—because of personal interests—may be pursuing claims against only one party to the litigation contrary to the client's best interests, that party has a legitimate interest in seeking to disqualify counsel and thus has standing

to file a motion to disqualify on the ground that the attorney's professional judgment may be affected by his or her own personal interests to the detriment of the client.

## B.

The Meyer firm contends that Reserve's allegations that the interests of the Meyer firm and PNE are adverse is on the basis of unsubstantiated allegations in Reserve's complaint and that if unsubstantiated allegations may serve as the basis for a motion to disqualify, we seriously erode the right of a party to select counsel. However, even if we accept only the version of the role of the Meyer firm outlined in Zimmer's deposition, we cannot at this stage of the proceedings rule that a jury may not find that the Meyer firm acted in a negligent manner as counsel for PNE in the Nemeth litigation. In his deposition, Zimmer acknowledges that he was aware of Ewing's conflict of interest shortly before the case came to trial and that as a matter of strategy he chose not to appear of record as trial counsel for PNE. Whether this decision was reasonable, whether he took appropriate steps to notify PNE, Medallion and Reserve of the conflict and whether his efforts to postpone the trial of the case were sufficient are matters for a jury to determine. Thus solely on the basis of the testimony of a member of the Meyer firm, a potential conflict exists.

## C.

The Meyer firm contends that its joinder will create no conflict because "if anything, the potential claim against MDBB&E (the Meyer firm)

would result in redoubled efforts to prevail against Reserve and thereby avoid a determination of legal malpractice." This argument is without merit for several reasons. First, there will undoubtedly be efforts to settle PNE's claim prior to trial and until the case reaches trial, the interests of the Meyer firm in minimizing liability through settlement are adverse to the interests of PNE in maximizing recovery. Second, during the trial of the case Reserve may offer testimony to support a jury verdict against the Meyer firm which counsel for the Meyer firm will be attempting to refute and decisions must be made on behalf of PNE as to the emphasis to be placed upon this evidence. Third, after a jury verdict the interests of PNE and the Meyer firm will be adverse with respect to motions for a new trial and appeals if any judgment is rendered against the Meyer firm and/or if PNE does not obtain a sufficient recovery against any defendant.

## D.

The Meyer firm contends that its interests are not adverse to PNE's interests "to the extent an insurer is involved in the claim against MDBB&E." However, this statement does not indicate whether professional malpractice insurance will cover the full amount of any recovery against the Meyer firm. Furthermore, even if the Meyer firm is fully insured, it will still have an interest in defeating the claim because a judgment may increase future malpractice insurance rates and because members of the Meyer firm may believe that a malpractice judgment may injure the firm's reputation.

## E.

Our finding that the Meyer firm's exercise of its professional judgment on PNE's behalf may be affected by its personal interests does not automatically preclude the Meyer firm from representing PNE. The Code of Professional Responsibility permits an attorney whose professional judgment on behalf of a client may be affected by personal interests to accept employment "with the consent of his client after full disclosure."[4] Thus the Meyer firm may continue to represent PNE if this court finds that PNE is fully aware of the potential conflict and has knowingly and understandingly consented to the Meyer firm's continuing representation.[5]

The affidavit submitted to this court on PNE's behalf does not establish that PNE is fully aware of the potential conflict. Furthermore, it is questionable whether in this case affidavits could ever establish that PNE is fully aware of the potential conflict. Thus a hearing will be scheduled before this court to take testimony from appropriate PNE officials. At this hearing PNE, through its present counsel, may offer any testimony which it wishes and the burden of proof will be on PNE to establish

---

4. We apply the standards of D.R. 5-101 in determining whether an attorney whose professional judgment may be affected by personal interests may *continue* employment. See D.R. 5-105(A), (B) and (C).

5. Because the personal interests of the Meyer firm do not make it impossible for an attorney from that firm to exercise independent professional judgment on PNE's behalf, Jedwabny v. Philadelphia Transportation Company, supra, and its progeny are inapplicable.

that PNE is fully aware of the potential conflict and knowingly and understandingly consents to the Meyer firm's continued representation.