**STATE of Oklahoma ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

**v.**

**Alexander B. McNAUGHTON, Respondent.**

**No. 3285.**

Supreme Court of Oklahoma.

June 3, 1986.

Publication Ordered June 6, 1986.

Dorothy J. Lindsey, Asst. Gen. Counsel, Oklahoma City, for complainant.

Mary M. Johnson, Messrs. James W. Bill Berry & Associates, Oklahoma City, for respondent.

OPALA, Justice.

This case presents for our consideration a report of the Professional Responsibility Tribunal [PRT] which finds that the respondent-lawyer, who had accepted representation of an adult defendant charged with the

felony offense of lewd molestation of a minor, *improperly* served also as counsel, in matters connected with his client's prosecution, for the alleged underage victim of the crime, her minor sister and their adult mother. Respondent, whose status as attorney for all of these four persons was fully known to the court and to the local prosecutor, does not deny that the State expected the victim and her two relatives to testify against his defendant-client. Not until the judge to whom the offense came to be assigned for trial called on the respondent to withdraw did he relinquish his status as counsel for *all four clients*.

Respondent seeks to shield his joint representation of all these persons from discipline by drawing our attention to undisputed proof in the record that he had made a full disclosure to the mother of "... a

potential conflict of interest ... and further advised the [C]ourt that ... [the mother] had consented to his representing her and her two children despite the fact that he [also] represented the [criminal] defendant in the pending case."

■ The sole question for decision is whether, when measured by the provisions of DR 5-105(A) and (C) of the Professional Responsibility Code [Code],[1] respondent's simultaneous representation of these four persons, upon a full disclosure and with the consent of at least two of his adult clients, may be viewed as free from ethical taint and hence be regarded as beyond the reach of disciplinary cognizance. Our answer is in the negative.

As exemplified in the text of its EC 5-15,[2] where the then leading case authority

1. Code of Professional Responsibility, 5 O.S. 1981, Ch. 1, App. 3. The terms of DR 5-105(A) and (C) provide:
"DR 5-105. Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer
(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).
(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

2. Model Code of Professional Responsibility as adopted by the American Bar Association, effective January 1, 1970. The provisions of EC 5-15 are:
"If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. *A lawyer should never represent in litigation multiple clients with differing interests;* [19] *and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.* If a lawyer accepted such employment and the interests did become actually dif-

fering, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially. On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation. If the interests vary only slightly, it is generally likely that the lawyer will not be subjected to an adverse influence and that he can retain his independent judgment on behalf of each client; and if the interests become differing, withdrawal is less likely to have a disruptive effect upon the causes of his clients. [Emphasis supplied.]
19 'Canon 6 of the Canons of Professional Ethics, adopted by the American Bar Association on September 30, 1937, and by the Pennsylvania Bar Association on January 7, 1938, provides in part that 'It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this Canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.' The full disclosure required by this canon contemplates that the possibly adverse effect of the conflict be fully explained by the attorney to the client to be affected and by him thoroughly understood....
'The foregoing canon applies to cases where the circumstances are such that possibly conflicting interests may permissibly be represented by the same attorney. But manifestly, there are instances where the conflicts of interest are so critically adverse as not to admit of one attorney's representing both sides.

on point is footnoted and quoted,[3] it was *the unmistakable intent of the Code* to preserve inviolate the ancient precept of the legal profession,[4] also found in the earlier Canons of Legal Ethics, that *no* attorney may represent interests which stand in a position of *actual* antagonism one to another.[5] No one could conscionably urge that the same counsel may represent persons who are postured in forensic combat against one another as parties opponent.[6] Because a lawyer who represents several persons with interests in actual and apparent conflict as to some particular subject matter exposes one or more of his clients to the likelihood of prejudice, misconduct will be found to arise from his joint employment without a showing of harm and regardless of disclosure and consent. It is abundantly clear that when an *actual and apparent rather than a potential and recondite conflict* does exist, the right to conflict-free legal assistance cannot be waived. The public interest in a properly functioning judicial system must be allowed to prevail over an individual's freedom to choose counsel known to be not entirely untrammeled by divided loyalties.[7]

The present case unfolds such actual and apparent conflict *ex lege* among the jointly represented individuals that the potential for improper conduct or motivation, despite disclosure and waiver, may give rise to a charge of professional misconduct. Once a legal practitioner undertakes to represent a criminal defendant, the alleged victim of the offense, as well as other government witnesses in the case, all become "enemy territory" and "off limits"[8] to defense counsel for the formation of an ethically acceptable attorney-client relationship about any matter connected with the subject of prosecution. The time-honored precept that a lawyer can serve but one master forbids his alliance with those who are postured by force of law in a position of actual and apparent adversarial alignment to his client. Although doubtless free from duplicity, fraud or even improper motive,

---

Such is the situation which this record presents. No one could conscionably contend that the same attorney may represent both the plaintiff and the defendant in an adversary action. Yet, that is what is being done in this case.' *Jedwabny v. Philadelphia Transportation Co.,* 390 Pa. 231, 235, 135 A.2d 252, 254 [1957], *cert. denied,* 355 U.S. 966, 2 L.Ed.2d 541, 78 S.Ct. 557 [1958]."

3. *Jedwabny v. Philadelphia Transportation Co.,* 390 Pa. 231, 235, 135 A.2d 252, 254 [1957], *cert. denied,* 355 U.S. 966, 78 S.Ct. 557, 2 L.Ed.2d 541 [1958].

4. In an early English opinion called the Simon Mason's Case, Common Bench, 1672, Freem. 74, the court "turned out" (struck) from the roll of attorneys one who "had been an *Ambidexter,* viz., after he was retained by one side he was retained by the other side ..." [Emphasis supplied.] In a somewhat later decision the King's Bench held that *"[n]o man, though by consent of parties, can be attorney on both sides."* Anonymous, Court of King's Bench, 1702, 7 Modern, 47. [Emphasis added.]

5. *State v. Hilton,* 217 Kan. 694, 538 P.2d 977, 981 [1975]; *Corbin v. Broadman,* 6 Ariz.App. 436, 433 P.2d 289, 292 [1967] and *State v. Leigh,* 178 Kan. 549, 289 P.2d 774 [1955].

6. *Jedwabny v. Philadelphia Transportation Co., supra* note 3, 135 A.2d at 254; *Kelly v. Greason,*

23 N.Y.2d 368, 378, 296 N.Y.S.2d 937, 244 N.E.2d 456, 462 [1968]; *In Re Grand Jury,* 446 F.Supp. 1132, 1139–1140 [U.S.D.C.N.D.Tex. 1978]; *Matter of Investigative Grand Jury Proceedings,* 480 F.Supp. 162, 170 [U.S.D.C.N.D. Ohio 1979] and *Re Cahill,* 313 Ky. 867, 230 S.W.2d 633, 634 [1950]; see also, *Castillo v. Estelle,* 504 F.2d 1243 [1974] and *People v. Stoval,* 239 N.E.2d 441 [1968].

7. Another sound policy consideration militating in favor of a *per se* rule for disqualifying counsel where the interests are found to be in actual and apparent conflict is that the unsophisticated client may not be regarded as able to understand the ramifications of his counsel's divided loyalties, however much they may have been explained to him. *Kelly v. Greason, supra* note 6.

For cases where actual conflict was found to exist and *was held not to be subject to waiver,* see *In re Gopman,* 531 F.2d 262, 268 [5th Cir. 1976]; *In re Grand Jury Investigation,* 436 F.Supp. 818 [W.D.Pa.1977]; *United States v. Garafola,* 428 F.Supp. 620 [D.N.J.1977]; *In re Grand Jury, supra* note 6 and *Matter of Grand Jury Proceedings,* 428 F.Supp. 273 [U.S.D.C.E.D. Mich.1976]. See also, *Re A. AND B., Attorneys-at-Law,* 44 N.J. 331, 209 A.2d 101, 17 A.L.R.3d 827 [1965].

8. See cases annotated in 27 A.L.R.3d 1431, 1434 [1969].

respondent's conduct nonetheless comes within the reach of our disciplinary cognizance.[9]

Whenever this court is called upon to function in its constitutional capacity as the state's *only* disciplinary tribunal for licensed legal practitioners, its determinations are made *de novo*. *No* deferential standards apply to a Professional Responsibility Tribunal's adjudication of *any* fact responsive to an issue formed in a disciplinary case.[10]

Upon a *de novo* review of all the pertinent facts in the record, we find that public reprimand constitutes a proper sanction for respondent's breach of discipline [11] and hereby effect its imposition; the respondent shall bear all costs of this proceeding.

All the Justices concur.

---

9.  *State v. Hilton, supra* note 5.

10. *State ex rel. Oklahoma Bar Association v. Raskin,* Okl., 642 P.2d 262, 265 [1982] and *State ex rel. Oklahoma Bar Association v. Braswell,* Okl., 663 P.2d 1228, 1230 [1983].

11. *State v. Hilton, supra* note 5 and *Re A. AND B., supra* note 7.