Billy WINTERS, a Minor, By and Through His Mother and Next Best Friend, Helen WINTERS, Appellant,

v.

CITY OF OKLAHOMA CITY, a Municipal Corporation, Appellee.

No. 63774.

Supreme Court of Oklahoma.

July 14, 1987.

Michael Gassaway, Hughes, Nelson & Gassaway, Oklahoma City, for appellant.

Richard C. Smith, Asst. Mun. Counselor, Oklahoma City, for appellee.

SUMMERS, Justice.

Plaintiffs' petition, which was signed and filed by attorney Michael Gassaway, alleged liability on the part of the City of Oklahoma City, for injuries received by plaintiff while a student at an Oklahoma City public school. The petition stated in part:

"... [T]he City of Oklahoma City, by and through its employees/teachers has a duty to its students and its school system to take reasonable measures to prevent ... assaults and batteries upon its students."

Defendant City (Appellee) simultaneously filed a motion to dismiss and an application to assess attorney fees and costs against plaintiff's attorney, with a brief in support of the motion and application. City's motion to dismiss was predicated upon 51 O.S.1981 § 152 6(a) and (b), 153, 155(18)[1] for the reason that the plaintiff's

1. The pertinent parts of these sections are as follows:

"§ 152. Definitions
As used in this act:

petition failed to state a claim[2] against the City as a political subdivision because City, a municipality, does not have the power nor the authority to operate, nor does it operate a public school system. The City cited in its brief that on at least three previous occasions (twice in 1982 and once in 1983) the same attorney had asserted that the defendant City was responsible for the acts of employees of a public school system and that the City had been dismissed from each lawsuit pursuant to 51 O.S.1981 §§ 152(6)(a) and b, 153 and 155(18). In support of its application to assess attorney's fees and costs City argued that the plaintiff's attorney was acting in bad faith or obdurate obstinacy in continuing to assert the same theory of liability against the City despite the rulings in the three previous lawsuits. The trial court sustained the City's motion to dismiss and found the attorney's conduct in the continued assertion of municipal liability for acts of an employee of an independent school system to be oppressive under *City National Bank and Trust v. Owens.*[3] Hearing was set for January 2, 1985, to determine a reasonable attorney's fee to be assessed against the attorney. On that date he failed to appear, whereupon the court took evidence of the amount of time expended defending the action and evidence on a reasonable fee, and awarded City $900.00 in attorney's fees as costs against attorney Gassaway and not against the plaintiff.

On January 10, 1985, the attorney filed a motion to reconsider, without citing any authority and without a brief in support. This motion was set for rehearing on January 25, 1985, and was denied at that time as being untimely filed. He then instituted this appeal from the denial of his motion to reconsider which sought only the reversal of the trial court's decision in assessing attorney's fees against plaintiff's attorney. City moved to dismiss the appeal. This court in an order issued April 15, 1985 treated the motion to reconsider as the functional equivalent of a timely motion for new trial and ruled that this appeal, commenced on the 10th day following the denial of a motion for new trial, was timely.

On appeal we are presented with two issues: (1) Whether the trial court had the inherent equitable power to assess attorney's fees and costs against the attorney for one of the parties and; (2) if it did, whether the assessment in this case was proper.

Under the so called "American Rule" governing the award of attorney's fees to a prevailing party, attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract. However, this rule does not serve as an absolute bar to the awarding of attorney's fees in the absence of statute or contract.

In *Owens* this court gave its sanction to an award of attorney's fees against an opponent under the "bad faith" exception to the American Rule. The trial court in the exercise of its equitable powers saw fit to tax against a *party,* as an item of cost, all the *unnecessary* expenses incurred because that party had acted in bad faith and for oppressive reasons. We held that because a party's actions were oppressive and because the oppressive action of a party was, even at common law, recognized as giving rise to an exception to the American Rule regarding the awarding of attorney's fees, the trial court "in the exercise of its inherent equitable powers, did not exceed its jurisdiction, powers, or decretion"[4] in awarding partial attorney's fees against a party opponent.

6. 'Political Subdivision' means"
   a. a municipality;
   b. a school district;
§ 153. Liability—Scope—Exemptions
Each political subdivision of this state shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment or duties subject to the limitations specified in this act."
§ 155. Exemptions from liability

A political subdivision or an employee acting within the scope of his employment shall not be liable if a loss results from:
18. An act or omission of a person other than an employee;"

2. 12 O.S.Supp.1984 § 2012B(6).

3. 565 P.2d 4 (Okl.1977).

4. *Owens* at 9.

The power to levy fees against a party who has litigated in bad faith arises from the court's traditional equitable powers. Courts of equity in the United States were endowed with the judicial powers possessed by the High Court of Chancery of England at the time of adoption of the Constitution.[5] Included among these powers was the power to levy attorney's fees for bad faith litigation.[6] *Owens* recognized the nonstatutory power to levy attorney's fees for bad faith conduct as a power the district courts of Oklahoma possess having full equity jurisdiction.

In *Roadway Express Inc. v. Piper,*[7] the U.S. Supreme Court cleared the way for personal liability of an attorney for an opponent's attorney's fees. The Court approved in principle such an assessment as an exercise of the court's inherent supervisory powers.[8] The court defined "inherent powers" as those which "are necessary to the exercise of all others".[9] These are the court's inherent powers to manage its own affairs so as to achieve the orderly and timely disposition of cases. These powers are implicit in the existence of a judicial system, and are a necessary incident to the exercise of a court's jurisdiction. These powers have been expressed in such practices as the contempt citation, sanctions for abusive litigation such as dismissal for failure to prosecute, and the imposition of attorney fees on a party for bad faith litigation.[10]

*Link v. Wabash R.R.*[11] held that among the court's inherent powers to deter abusive practices was the power to dismiss an action *sua sponte* for lack of prosecution. This power emanated not from a "rule or statute, but [from] the control necessarily invested in courts to manage their own affairs"[12] so as to achieve the orderly and expeditious disposition of cases. The Court in *Roadway* indicated that the assessment of attorney's fees is certainly a much less severe sanction than outright dismissal.[13]

The court in *Roadway* approved the award of attorney's fees for either substantive or procedural bad faith. The court stated:

> "The bad-faith exception for the award of attorneys' fees is not restricted to cases where the action is filed in bad faith. '[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.'"[14]

With respect to the issue of awarding an attorney's fee against an attorney of one of the parties, the court concluded:

> "The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial process."[15]

The court noted that like other sanctions, attorney's fees certainly should not be assessed without proper notice and hearing. But such sanctions are within a court's powers. The court remanded the case to the district court for a specific finding that counsel's misconduct constituted bad faith.

5. *Fontain v. Ravenel,* 58 U.S. (17 How.) 369, 384, 15 L.Ed. 80 (1854); Judiciary Act of 1789, Ch. 20, 1 Stat. 73 (1845). For an extensive treatment of the historical development of this power see *Guardian Trust Co. v. Kansas City So. Ry.,* 28 F.2d 233, 241–46 (8th Cir.1928), *rev'd on other grounds,* 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659 (1930).

6. *Vaughan v. Atkinson,* 369 U.S. 527, 530, 28 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962). (Power to award fees part of equitable powers of court).

7. 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

8. Id. at 764, 100 S.Ct. at 2463.

9. Id. at 764, 100 S.Ct. at 2463. Quoting *United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812).

10. Id. 447 U.S. at 764–65, 100 S.Ct. at 2463–64.

11. 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

12. Id. at 630, 82 S.Ct. at 1389.

13. *Roadway* 447 U.S. at 765, 100 S.Ct. at 2463.

14. Id. at 766, 100 S.Ct. at 2464 quoting *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973).

15. Id.

The court stated that a finding of bad faith would have to precede the sanctions under the court's inherent power of assessing attorney fees against counsel.[16]

■ Having recognized in *Owens* the established exception to the American Rule that permits an award of attorney's fees against a party who litigated in bad faith,[17] we now hold that the trial court in the exercise of its inherent equitable powers can tax against a party's attorney as an item of costs all unnecessary expenses incurred because of that attorney's oppressive actions. Like other sanctions, attorney's fees should not be assessed lightly or without fair notice and an opportunity for a hearing. But in a proper case, such sanctions are within a court's powers.

■ In the case before us the attorney for plaintiff intentionally filed and prosecuted a type of claim for the fourth time (twice in 1982, once in 1983, and here in 1984) that under Oklahoma law lacks plausible legal or factual basis upon which the plaintiffs could have recovered against the City. The claim is contrary to Oklahoma statute and case law. Each previous lawsuit had been dismissed pursuant to 51 O.S.1981 §§ 152(6)(a) and (b), 153, and 155(18).[18]

In *Conway v. Ohio Casualty Insurance Co.* [19] the same attorney (Gassaway) sued a school district. This court commented

"Three months after the accident the child's attorney wrote a letter to the school district's insurer advising of a claim for injury. The attorney apparently under the misapprehension that the School District was a subdivision of the City of Oklahoma City, sent written notice of the claim to the clerk of Oklahoma City rather than to the clerk of the school district as required in 51 O.S.1981 § 156(B)...."

The attorney was thus put on notice that an independent school district and the City

of Oklahoma City are separate political subdivisions.

The attorney argues on appeal that an attorney should not be punished for pursuing new or imaginative causes of action. In effect he argues that there will be no effective system of private counsel if private attorneys are discouraged from and/or punished for pursuing new and/or imaginative causes of action. We agree that the independence of the private bar is an important consideration. However, we must balance that consideration against the interest of defendants having to bear the recurring cost of defending groundless suits. In *Owens* where the plaintiff dismissed its lawsuit after four days of trial we stated:

"Clearly, under the facts, plaintiff's actions were oppressive—plaintiff dragged the defendants into court, put them to the expense of trial, without the chance of having suit determined in their favor, caused fruitless expenditures of time, effort, and money by all involved while plaintiff, at the same time, had the opportunity to test the strength and weakness of his case. In short, plaintiff used the courtroom as a rehearsal hall at the expense of his adversary and the people. Petitioner contends that the trial court lacks the power to remedy this injustice. We do not agree." [20]

Certainly an attorney should be free to file any lawsuit he deems proper in order to assert his clients' lawful claims. However, we do not think that unfounded lawsuits should proliferate at the repeated expense of defendants such as the taxpayers of Oklahoma City. There is no legal authority (and the attorney offers none) that would suggest that he be allowed to do so. Nor does he offer any authority in support of his theory that a municipality, a political subdivision under 51 O.S. 1981 § 152(6)(a), should be responsible for the acts of em-

16. Id. 447 U.S. at 767, 100 S.Ct. at 2464.

17. *Roadway,* supra note 7. See also *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973).

18. Supra at note 1.

19. 669 P.2d 766, 767 (Okl.1983).

20. Supra note 3 at p. 7.

ployees of an independent school district, a separate political subdivision under 51 O.S. 1981 § 152(6)(b). This result would be contrary to the clear language of 51 O.S.1981 §§ 152, 153, and 155(18) and 70 O.S.1981 §§ 1–115, 3–104, 5–101, 5–105 and 5–117.[21] The attorney knew of the squarely applicable precedent establishing the court's basis for its ruling. The attorney's behavior in continuing to file lawsuits against the City of Oklahoma City for the alleged acts of the employees of an independent school district constitutes "bad faith" and "oppressive behavior" under *Owens.* [22]

In the instant case the trial court held a hearing on the motion to assess costs and attorney's fees against Gassaway, and found that the behavior of the attorney constituted "oppressive behavior". A member of the attorney's firm was present and participated at that hearing. At that time the trial court specially set a hearing on January 2, 1985 (with notice to the member of the attorney's firm) to determine a reasonable amount of attorney's fees. On January 2, 1985 the attorney did not appear for the hearing. After receiving evidence the court found the amount of nine hundred dollars ($900.00) as a reasonable fee. In the exercise of its inherent powers the trial court did not exceed its jurisdiction, powers, or discretion in awarding attorney fees of $900.00 as costs against the attorney Michael Gassaway.

## JUDGMENT OF THE TRIAL COURT AFFIRMED.

DOOLIN, C.J., and SIMMS, ALMA WILSON and KAUGER, JJ., concur.

OPALA, J., concurs in part, dissents in part.

HARGRAVE, V.C.J., and HODGES and LAVENDER, JJ., dissent.

OPALA, Justice, concurring in part and dissenting in part.

The court holds that district courts have "inherent power"[1] to make a counsel-fee award directly against a lawyer found to have instigated groundless litigation in bad faith. I join the pronouncement *only* insofar as the court's imprimatur extends to (a) awarding compensation to the party litigant harmed by a lawyer's culpable litigation conduct, (b) insulating the *innocent* client from liability for the lawyer's misdeed, and (c) penalizing the oppressive, abusive or vexatious behaviour of the wrongdoing attorney by ordering compensation to be paid for the value of services attributable to the lawyer's misconduct. I *recede* from the court's *mistaken notion* that the authority to implement the new course charted by today's opinion may be validly reposed in the district courts acting pursuant to their "inherent powers."

I would hold that a party aggrieved in the course of litigation by culpable conduct of an attorney may seek an order of compensation in the district court for the value

**21.** These sections make a school a separate legal entity under the control and supervision of the State Board of Education and the board of education of each school district.

**22.** Supra note 3. 12 O.S.Supp.1984 § 2011 became effective November 1, 1984, less than two weeks after this petition had been filed. If the petition had been filed on or after that date, this section would have been applicable and could have provided a statutory basis for awarding attorney's fees here. Section 2011 states in pertinent part:

"The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this section, it may be stricken as sham and false and

the action may proceed as though the pleading had not been served. For a willful violation of this section, an attorney may be subjected to appropriate disciplinary action."

**1.** State courts claim as "inherent in them" those powers which, though neither granted to, nor withheld from, them by the state constitution and not found in any other source of law, must nonetheless be conceded to the judiciary as a separate department of the government because their exercise is deemed *absolutely essential* for the performance of the court's constitutionally mandated mission. *State v. Superior Court,* 78 Ariz. 74, 275 P.2d 887, 889–890 [1954] and *O'Coin's, Inc. v. Treasurer of County of Worcester,* 362 Mass. 507, 287 N.E.2d 608, 613–614 [1972]; see Connors, *Inherent Power of the Courts—Management Tool or Rhetorical Weapon?,* Just.Sys.J., pg. 63 [1973].

of legal services attributable to the lawyer's offending demeanor. If, after hearing the application, the judge should find a basis for granting relief, the matter must then be presented for *de novo* review before the Supreme Court in the very same manner that *other* prosecutions initiated by the Oklahoma Bar Association's Professional Responsibility Commission are submitted for this court's exercise of its *exclusive disciplinary cognizance* over lawyers.

## I

### THE COURT HAS PLACED MISTAKEN RELIANCE ON *ROADWAY EXP., INC. v. PIPER*[2] AS AN AUTHORITY THAT IS APPROPRIATE FOR ADOPTION IN OKLAHOMA

Today's pronouncement confers on the district courts "inherent power" over lawyers. The court relies for authority on Part III of the United States Supreme Court's opinion in *Roadway Exp., Inc. v. Piper.*[3] Writing for the Court, in Part III Justice Powell declared that "[t]he *power* of a [trial] court *over members of its bar* is at least as great as its authority over litigants." [Emphasis added.][4] The trouble with *Piper* is *twofold.* Firstly, Part III of

2. *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 764–765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 [1980].

3. See footnote 2 *supra.*

4. *Roadway Exp., Inc. v. Piper, supra* note 2, 447 U.S. at 766, 100 S.Ct. at 2464.

5. Justices Stewart and Rehnquist expressly declined to reach the inherent-power question considered in Part III of Justice Powell's opinion. See footnote 2 *supra,* 447 U.S. at 765, 100 S.Ct. at 2463; Chief Justice Burger dissented from the entire opinion; Justice Stevens expressly dissented from the "inherent-power holding" and Justice Blackmun stated that he would have opted for recognition of the trial court's authority to tax an award against a wrongdoing lawyer under the rubric of "a component of the bad-faith exception of the American Rule authorizing recovery of attorney's fees directly from a vexatious opposing counsel." See footnote 2 *supra,* 447 U.S. at 769, 100 S.Ct. at 2465.

6. 28 U.S.C. §§ 1654 and 2071; see, *Frazier v. Heebe, Chief Judge, United States District Court for the Eastern District of Louisiana, et al.,* — U.S. —, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987).

the Court's opinion did *not,* in my view, garner the requisite number of five votes;[5] secondly, the analogy drawn between the powers possessed by the lower federal judiciary and those of Oklahoma trial courts is, at best, flawed. In the federal judicial structure, unlike in the Oklahoma court system, each United States district court is authorized to establish and to control its own local bar.[6] In contrast, the lawyers of this state are all licensed and supervised by a *single* body organized centrally under the *inherent power of the Oklahoma Supreme Court.*[7]

## II

### THE DISTRICT COURTS OF OKLAHOMA HAVE *NO* INHERENT POWER OVER THE PRACTISING BAR

Although the *award* of counsel fees to the litigant harmed by a lawyer's vexatious conduct may be treated as *compensatory,* the *sanction* itself clearly must be classified under a *disciplinary* rubric. It is imposable—much like restitution in bar proceedings—for that conduct in litigation which is found to be *culpably vexatious* and hence *unprofessional.*[8] A practition-

7. *In Re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113 [1939] and *Tweedy v. Oklahoma Bar Ass'n,* Okl., 624 P.2d 1049, 1052 [1981].

   *The use of inherent powers by trial courts that function within a centrally managed state judicial service has long been recognized as a fit subject for system-wide regulation. See, e.g., O'Coin's, Inc. v. Treasurer of County of Worcester, supra* note 1, 287 N.E.2d at 615.

8. The conduct sanctioned here as culpable is *explicitly* condemned by DR–7–102(A)(1) and (2), the Code of Professional Responsibility, 5 O.S.1981 Ch. 1, App. 3, which provides:

   "A. In his representation of a client, *a lawyer shall not:*
   (1) File a suit, assert a position, conduct a defense, delay a trial, or *take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.*
   (2) *Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.*" [Emphasis added.]

er licensed by a state's integrated bar may be disciplined *only* by the supreme court of the state acting *qua* the bar's *supreme and exclusive authority.* [9]

Ever since the Supreme Court's 1939 order that organized all legal practitioners into a unitary state bar,[10] this court's inherent power to supervise lawyers *has come to be recognized as nondelegable.* [11] The responsibility for the exercise of disciplinary cognizance is reposed *solely* in the Supreme Court of Oklahoma.[12] Because the function cannot be shared, no *disciplinary* sanction, whatever its form or origin, may be efficaciously visited on a lawyer unless it is imposed by an order of this court.

Today's opinion launches us upon a path of *private* prosecutions to secure restitution from lawyers who culpably inflict harm in a litigation-related breach of discipline. The new system doubtless will spawn *numerous* claims asserted in *multiple* proceedings to redress private and public rights that arise from a *single* episode of misconduct. I am unwilling to countenance such a radical departure from the present procedural regime and would hence prefer to leave Oklahoma's disciplinary cognizance, together with the ancillary jurisdiction over restitution, exclusively within the control of the Bar and of this court.

## III

## SUMMARY

The district court's order awarding counsel fees to an aggrieved litigant for legal services attributable to vexatious conduct by a culpable lawyer must be treated on review as not more than a referee's finding and recommendation.[13] The penalized lawyer is entitled to *de novo* review in the same manner [14] as that established for the disciplinary prosecutions by the Oklahoma Bar Association.[15]

For all these reasons I would accord the lawyer in this case the very same quality of review as that which governs in proceedings for imposition of bar discipline; I would accordingly treat the award under consideration here as a referee's recommendation for imposition of a disciplinary sanction; and, after a *de novo* review of the proceedings, I would adopt the proposed sanction as this court's order for administration of professional discipline.

---

9. *Taylor v. Hayes,* 494 S.W.2d 737, 747 [Ky. 1973]; see also *Taylor v. Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 [1974].

10. *In Re Integration of State Bar of Oklahoma, supra* note 7.

11. *In Re Integration of State Bar of Oklahoma, supra* note 7, 95 P.2d at 115, wherein the court said:
   " 'The inherent power of this court which petitioners ask us to invoke has always existed. *This power is not subject to delegation....'"* [Emphasis added.]

12. *State ex rel. Okl. Bar Ass'n v. McNaughton,* Okl., 719 P.2d 1279, 1282 [1986]; *State ex rel. Oklahoma Bar Association v. Raskin,* Okl., 642 P.2d 262, 265 [1982] and *State ex rel. Oklahoma Bar Association v. Braswell,* Okl., 663 P.2d 1228, 1230 [1983].

13. Judicial personnel of the district courts may be utilized as referees of the Supreme Court.

*Application of State ex rel. Dept. of Transp.,* Okl., 646 P.2d 605, 609 [1982] and *Ex Parte Brink,* 196 Okl. 361, 162 P.2d 604 [1945].

14. *State ex rel. Okl.Bar Ass'n v. McNaughton, supra* note 12.

15. I would not dismiss this case although the petition-in-error is *utterly inefficacious* for the commencement of an appeal. Neither the caption nor the body of the petition designates *the lawyer* as the party appellant herein. The omission constitutes a fatal jurisdictional defect. See, *Tisdale v. Wheeler Brothers Grain Company, Inc.,* Okl. 599 P.2d 1104, 1105 [1979] and *Ogle v. Ogle,* Okl., 517 P.2d 797 [1973]. I would overlook the patent infirmity and treat this cause as an original proceeding to approve the recommended sanction for imposition of professional discipline.