Frank Austin ZEIGLER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. M–89–195.

Court of Criminal Appeals of Oklahoma.

Feb. 25, 1991.

Michael J. Fairchild, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

FRANK AUSTIN ZEIGLER, appellant, was convicted of Direct Contempt of Court, in violation of 21 O.S.Supp.1984, § 565.1, in Case No. CRF–88–127 in the District Court of Creek County. The Honorable David D. Thompson, District Judge, assessed a fine of $1,000.00 and jury costs and sentenced appellant to three (3) days in the Creek County Jail. From this Judgment and Sentence, appellant appeals.

The appellant is an attorney from Tulsa, Oklahoma, who was retained by Adrean V'Shane Workman to defend Workman in a Creek County criminal action. The jury

trial was scheduled to begin on November 15, 1988, at 9:00 a.m. At 9:00 a.m., the State announced ready and Mr. Workman informed Judge Thompson that appellant was involved in a federal case in the Northern District of Oklahoma. Mr. Zeigler did not appear, did not call the court or Judge, but chose to stay in his office (or some other place) and not act as an officer of the court and show proper respect for the court, client and jury system. At that time, Judge Thompson issued a body attachment for appellant's appearance. At 9:35 a.m., Mr. Prather appeared on behalf of appellant to argue for a partial continuance. Mr. Prather explained to the court that appellant was involved in a federal case that had been filed approximately five years ago. A hearing on attorney fees, which had originally been scheduled for October 15, had been rescheduled for November 15, at 1:00 p.m. Due to the fact that appellant had to present witnesses in that case, including two from out of state, he needed a continuance in the Workman case until November 16, 1988. Mr. Prather stated that appellant had been under the impression that Mr. Workman was going to enter into a plea agreement in the case and not go to trial. Finally, Mr. Prather informed the court that appellant also offered to pay the court costs for that day. Judge Thompson responded that appellant had failed to appear in the past and that he had known about the jury trial since October 17, 1988, and, further, that it was not the first time that a body attachment had been issued for him. Therefore, due to appellant's lack of communication with the court, Judge Thompson overruled the motion.

At 2:50 p.m. that afternoon, appellant appeared before the court and explained that his services for Mr. Workman had been terminated by Mr. Workman's mother. After overruling appellant's motion to make an offer of proof concerning his termination from the case, the court warned appellant that if he did not proceed to trial, he would be held in contempt of court. Appellant explained that an agreement had been worked out with the District Attorney's office concerning a plea agreement

for Mr. Workman, but on the prior Thursday, he was contacted by the district attorney and told that the court had some problem with taking a plea in the case. Appellant then questioned whether the court had an improper ex parte communication with the District Attorney's Office. Appellant further explained that he had received his notification on his application in federal court after the Workman case had been passed on October 17, 1988. Appellant stated that he had approached the court concerning the conflict in cases but the court had indicated that it would allow appellant to leave at approximately 4:00 p.m. on November 17. Again being told that he was going to be held in contempt if he did not proceed to trial, appellant explained that he did not even have his case file with him because he had been taken into custody directly after his testimony in federal court and transported to Creek County.

Mr. Zeigler was given ample time to explain his lack of courtesy to the court. His attitude from the written transcript would give any judge grounds for contempt. It is obvious from the transcript that hard feelings exist between counsel and the court.

The court then asked appellant whether he had any witnesses to call prior to being found in contempt of court. Appellant called Mr. Workman's mother to the stand, where she testified that she terminated appellant from her son's case. After hearing further arguments, the court held appellant in contempt of court for refusing to proceed with the jury trial and assessed a fine of $1,000.00, plus jury costs for the day, and a sentence of three (3) days in the Creek County Jail. The court further set an appeal bond at $10,000.00. However, this court modified appellant's bond in H–89–949.

■ In his first assignment of error, appellant contends that the trial court erred in failing to refer the case to another judge for the contempt hearing. In *Pittman v. State,* 718 P.2d 366, 368 (Okl.Cr.1986), this Court discussed the two primary considerations in the determination of whether a judge should disqualify himself. The first consideration is the extent to which a

judge's conduct is integrated in the contempt. The second consideration is whether the contempt mandates immediate action. *Id.*

■ After a review of the record, we do not find that appellant's behavior amounted to such a personal attack on the trial judge to necessitate disqualification, nor was the judge's conduct so intertwined in the contempt to warrant disqualification. Furthermore, we find that appellant's conduct constituted disorderly behavior directed against the dignity and authority of the judge and the administration of justice, thereby warranting immediate punishment. *See Brown v. State,* 677 P.2d 1089, 1091 (Okl.Cr.1984).

■ Appellant next contends that the trial court erred in failing to give him a jury trial. However, it has long been the rule that one held in direct contempt is not entitled to a jury trial. *Ex parte Stephenson,* 89 Okl.Cr. 427, 209 P.2d 515, 523 (1949).

Appellant also argues that the court failed to inform him of the specific grounds for the contempt charge. However, we find this contention to be clearly rebutted by the record.

■ Appellant next complains that the trial court failed to specify the sanctions that could be imposed. However, appellant cites no authority for the proposition that the trial judge must state the exact sanction that will be imposed for the contempt. *See Hines v. State,* 684 P.2d 1202, 1205 (Okl.Cr.1984).

■ As a part of the findings and the order of the trial court, the judge imposed the jury expense upon the appellant. This was for 26 or 27 jurors plus mileage. The court did not state whether this was a part of the fine or a sanction of the court. It has long been held that the court has the inherent power to impose sanctions. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). The Supreme Court held in *Roadway* that the most prominent of the sanctions is contempt and stated "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Id.,* 447 U.S. at 764, 100 S.Ct. at 2463, 65 L.Ed.2d at 500.

The Oklahoma Supreme Court has held that all "costs" of trial that were unnecessary expenses incurred because of an attorney's oppressive actions are proper charges to such attorney. *City National Bank & Trust Co. v. Owens,* 565 P.2d 4 (Okl.1977). The court stated that this was the "inherent equitable power" of the court and did not exceed its authority. Justice Summers wrote to the issue in a recent Supreme Court case and found that the court has the inherent equitable power to assess attorney's fees and costs against an attorney who causes unnecessary expenses because that party had acted in bad faith and oppressive reasons. *Winters v. City of Oklahoma City,* 740 P.2d 724 (Okl.1987). This he found even though contrary to the so-called "American Rule".

Effective November 1, 1984, the Legislature added to the statutes 21 O.S. § 565.1. This statute gives the trial court the power to censure for contempt anyone who in open court willfully obstructs judicial proceedings. Subsection E states that the judge before whom the courtroom misconduct occurs may impose "appropriate sanctions including punishment for contempt." It is clear, therefore, that the Legislature was giving the court power to impose sanctions for direct contempt of court in addition to the fine that is set forth in 21 O.S. § 566 that is referred to below. Therefore, effective with the passage of the new statute, the trial court has the statutory power in addition to the implied power referred to in *Roadway.*

We are aware of the decision in *Sellers v. Johnson,* 719 P.2d 476 (Okl.App.1986). This case held that costs (jury expense) could not be taxed to a party who *dismissed* a case without prejudice to refiling. Here the attorney failed to show up for trial and caused the extra expense to the County. *Sellers* cites as authority *Gleckman v. U.S.,* 80 F.2d 394 (8th Cir.1935). *Gleckman* is not on point as no contempt or sanctions were involved. In that case,

costs were assessed under Federal Statute in a tax evasion case which were "costs of prosecution". We would agree that jury costs are generally the expense of maintaining the system of the courts, but in this case, the expense was caused by the contempt of the appellant and had nothing to do with maintaining the system. This is a case where appellant's contempt was the cause of the expense that he should bear. The District Court must, therefore, find the exact amount of jury expense that is to be taxed as a sanction to appellant. Any holding in *Minter v. State*, 765 P.2d 803 (Okl. Cr.1988) to the contrary is hereby over-. ruled.

■ A caveat must be given. This Court, nor should any court, allow any form of sanction to be imposed that is not *related to the contempt*. Any "costs" must have a relationship to the contempt or sanction.

■ Finally, appellant contends that the punishment imposed in this case was excessive. Title 21 O.S.Supp.1984, § 566 limits punishment for contempt at Five Hundred Dollars ($500.00) or imprisonment in the county jail not exceeding six (6) months, or both. Therefore, the trial court's punishment in the present case exceeded that allowed by statute. We are of the opinion that under the facts and circumstances of this case, the sentence should be modified to a fine of Five Hundred Dollars ($500.00) and confinement to one (1) day in the county jail. The judgment and sentence is AFFIRMED as MODIFIED.

LANE, P.J., LUMPKIN, V.P.J., and BRETT, J., concur.

PARKS, J., concurs in part, dissents in part.

PARKS, Judge, concurring in part, dissenting in part:

I concur in the judgment of the Court that the punishment imposed in this case exceeded the statutory limits. However, I must dissent to whatever the majority opinion is supposed to be overruling in *Minter v. State*, 765 P.2d 803 (Okl.Cr.1988). In *Minter* a unanimous Court, that included this writer and Judges Brett and Bussey, held that 21 O.S.Supp.1984, § 566, did not confer jurisdictional power on the courts to punish contempt by imposing payment of litigation costs as part of the punishment.

The majority states that the legislature gave the courts the power to impose sanctions for direct contempt of court in addition to the fine couched in 21 O.S.Supp. 1984, § 566. The majority relies on Section E of 21 O.S.Supp.1984, § 565.1, which states that the judge may impose appropriate sanctions including punishment for contempt. This language necessarily infers that multiple sanctions may be available. However, the crux of the issue is whether the sanction contemplated is appropriate. Certainly punishment for contempt is appropriate and is limited by 21 O.S.Supp. 1984, § 566. Punishment for additional sanctions must therefore lie outside this limiting statute. Nevertheless, assessing the cost of a jury panel is not appropriate in a criminal trial. If it were otherwise there would be no logical end to the litigation costs assessed because an endless number of other costs can be shown to be as "related to the contempt" as jury expense. The judge's salary, courtroom space, utility costs, and various other "necessary" expenses could also be assessed as litigation costs. Moreover, the majority announces, by *judicial fiat*, that the lower court must find the *exact amount* of jury expense that is to be taxed as a sanction. Presumably, any other costs would be subject to the same exactitude rule as the jury expense under this rule. However, determining "exactly" what these other costs amount to and derive from would involve the torture of numbers and language not unlike that required to conclude that these types of costs are appropriate in the first place.

In any event, the majority fails to cite authority or sound reasoning for overturning any part of our previous holding in *Minter*. Therefore, I respectfully dissent from this part of the decision.