1998 OK 55

**Charles A. GIBBS, III, Appellee,**

v.

**H.A. EASA, Appellant.**

**No. 86519.**

Supreme Court of Oklahoma.

June 9, 1998.

As Corrected on Denial of Rehearing
April 3, 2000.

Charles A. Gibbs, III, Tulsa, Appellee pro se.

Eric B. Bolusky, Hufman Thomas & Bolusky, Tulsa, for Appellant.

ALMA WILSON, Justice:

¶1 The issue on appeal is whether the trial court had an adequate legal basis to assess sanctions in the form of attorney's fees against the appellant, H.A. Easa, during post-judgment collection proceedings. We hold it did not.

¶2 On December 12, 1994, the appellee, Charles A. Gibbs, III, obtained a judgment in the Small Claims Division of the District Court of Tulsa County for $1,661.52 and court costs against the appellant, Easa, for legal services. Gibbs alleges that during post judgment collection proceedings conducted in the trial court, Easa violated numerous court orders, altered assets, and made false and misleading statements to the court to avoid the collection of the judgment. On February 15, 1995, the trial court found that Easa should be cited with contempt of court for failure to comply with the court's order to provide copies of specific documents. Easa was ordered to appear before the trial court on February 22, 1995, to show cause why he should not be incarcerated for wilful failure to comply with the order of the court. The record reveals that on February 22, 1995, Easa was placed in custody, his arraignment was set for March 8, 1995, and his bond was set at $5,000.00, which was posted the next day.

¶3 On March 6, 1995, Gibbs filed an application for an order assessing costs and for sanctions in the form of attorney's fees for the time he had spent attempting to collect the small claims judgment. He initially asked for $2,374.00 for attorney's fees and costs. On July 7, 1995, Gibbs filed an application for citation for contempt of court alleging that Easa had refused to comply with the orders of the trial court to turn over property to Gibbs. Then on September 1, 1995,

Gibbs supplemented his application for sanctions. He alleged that Easa had continued his pattern of contemptuous behavior, which required Gibbs to attend no less than six hearings related to the first citation of contempt issued by the trial court. He additionally alleged that he had been required to conduct an asset hearing to show that Easa had misrepresented the status of his ownership of automobiles used as taxi cabs. Easa also refused to deliver the taxi cabs that he owned, which required Gibbs to travel to pick up the property. Gibbs asserted that Easa misrepresented the location of the property ordered to be delivered by the court. Gibbs alleged that once he obtained the property, he had to secure it to protect it from individuals sent to recover it on behalf of Easa. He asked for an additional sanction for attorney's fees in the amount of $2,062.50, and costs of $155.81, for a total of $4,062.50.

¶4 On September 7, 1995, the case again came before the trial court on Gibb's application and supplement for sanctions, sentencing for direct contempt of court, and trial for indirect contempt of court. The court found that Gibbs' application and supplement for sanctions should be granted, and judgment was given in favor of Gibbs against Easa for a total of $4,373.56, which the court stated had accrued to the day of judgment. This amount does not include the $1,661.52 judgment upon which these post-judgment collection proceedings rest. The court then continued sentencing for the direct contempt of court, and continued trial on the indirect contempt of court.

¶5 After another continuation, the court, on November 20, 1995, found that Easa had stipulated to application of his cash bond on file with the Court Clerk's office to pay the sanction judgment in full. The court ordered that this payment purged Easa of contempt of court and dismissed the citations for contempt. Easa appealed the judgment,[1] and

---

1. Appellee Gibbs filed a motion to dismiss the appeal based on his assertion that Easa had waived his right to appeal by voluntarily paying the sanction award against him with the intent to compromise or settle the matter. This Court ordered consideration of the motion deferred to allow the trial court, sitting as this Court's special master, to make findings of fact and conclu-

sions of law regarding the voluntary nature of that payment. In response to the report of the special master, this Court, on April 15, 1996, denied the motion. In reliance on *Grand River Dam Authority v. Eaton,* 1990 OK 133, 803 P.2d 705, this Court found that the payment of the judgment was an involuntary payment to avoid further contempt proceedings and that the pay-

the Court of Civil Appeals modified the judg-ment by limiting the sanction to $500.00. As support for its holding, the Court of Civil Appeals cited 21 O.S.1991, § 566(A), which limits the punishment for direct or indirect contempt to a fine for $500.00 or by imprisonment in the county jail not exceeding six months, or by both, at the discretion of the court. Gibbs petitioned for certiorari, which this Court granted.

 ¶ 6 Although the record is not clear, it appears from Gibbs' brief in support of his application for costs and sanctions that the application for sanctions is based on Easa's contempt conviction. Proceedings for direct contempt are neither civil nor criminal in character, but are *sui generis,* and this Court has jurisdiction to review an order adjudging one in contempt and imposing punishment therefore. *Fulreader v. State,* 1965 OK 187, ¶ 3, 408 P.2d 775, 776–777. The question would be whether Gibbs was entitled to attorney's fees and costs based on Easa's direct contempt of court. It does not appear that the indirect contempt was ever tried. In his argument to the trial court, Gibbs cites three statutes and no other authority to support his application for sanctions.

¶ 7 In his brief before the trial court in support of sanctions, Gibbs cited 12 O.S.1991, § 850, as grounds for the contempt. That statute provides in pertinent part:

"The judge after the hearing provided herein may order any property of the judgment debtor, not exempt by law, in his possession or under his control to be applied toward the satisfaction of the judgment, and may enforce the same by proceedings for contempt in case of refusal or disobedience."

Gibbs then cited 21 O.S.1991, § 565.1(E), which provides in pertinent part: "The judge before whom courtroom misconduct occurs may impose appropriate sanctions including punishment for contempt." He appears to infer from this statute that sanctions are permissible in addition to punishment for contempt. Then as his third statutory authority, Gibbs cites 12 O.S.Supp.1997, § 2011, which includes attorney's fees in the permis-sible sanction for filing and/or arguing pleadings in bad faith.

 ¶ 8 Easa's sole argument for his appeal is that his conduct, as alleged by Gibbs, did not fall within the scope of 12 O.S.Supp. 1997, § 2011, because the statutory sanctions therein are connected to a party signing a pleading in bad faith. But Gibbs answers that his motion for sanctions was not based on § 2011, but on the authority found in 21 O.S.1991, § 565.1(E), and 12 O.S.1991, § 850. Gibbs explains the court has the power to sanction a party who exhibits behavior punishable as a direct contempt of court by assessing attorney's fees against the party. He uses 12 O.S.Supp.1997, § 2011 merely as an analogy to show that in other circumstances the legislature has authorized attorney's fees to be assessed when a party is sanctioned for violating subsection B of § 2011 by "signing, filing, submitting, or later advocating, a pleading, written motion, or other paper," for an improper purpose, such as for harassment, unnecessary delay, or needless increase in the cost of litigation. The problem with that reasoning is that § 2011 provides for attorney's fees as part of the sanction, and 21 O.S.1991, § 565.1(E) does not.

¶ 9 The Oklahoma Constitution, Article 2, § 25 provides that the legislature shall regulate the proceedings and punishment in matters of contempt. Title 21 O.S.1991, § 566(A) specifically provides for the punishment for contempt:

"Unless otherwise provided for by law, punishment for direct or indirect contempt shall be by the imposition of a fine in a sum not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail not exceeding six (6) months, or by both, at the discretion of the court."

Gibbs has not shown that any special contempt statute applies to Easa, and has not cited a statute showing that he is entitled to attorney's fees if Easa is found in contempt. Title 12 O.S.Supp.1996, § 2011 has the opposite effect than the one Gibbs advocates. Section 2011(2) specifically provides that if imposed on motion and warranted for effec-

ment did not make relief impossible in case of

reversal.

tive deterrence, the trial court may issue an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses. The legislature could, but did not, choose to do the same in 21 O.S.1991, § 566. We decline to amend the statute by judicial fiat.

¶ 10 In his brief in support of his petition for certiorari, Gibbs argues that *Zeigler v. State,* 1991 OK CR 25, 806 P.2d 1131 contains authority supporting attorney's fees as sanctions in addition to the statutory punishment for contempt in the nature of a fine and jail sentence. In construing 21 O.S.1991, § 565.1, the Court of Criminal Appeals in *Zeigler* held that the legislature gave the district courts the power to impose sanctions for direct contempt of court in addition to the fine that is set forth in 21 O.S.1991, § 566. *Zeigler,* 1991 OK CR 25, ¶ 13, 806 P.2d at 1134.

¶ 11 The facts in *Zeigler* reveal that the attorney for the defendant in a criminal case failed to appear when a jury trial was scheduled. The court issued a body attachment for the attorney's appearance. When the attorney was brought in, the court gave him an opportunity to explain his lack of courtesy to the court of failing to appear, or to call the court to explain why he could not appear. The Court of Criminal Appeals observed that the attorney's attitude from the written transcript alone would give the trial court ground for contempt. The trial court held the attorney in contempt, assessed a fine of $1,000.00, plus jury costs for the day, and sentenced him to three days in the county jail. The court set the appeal bond at $10,000.00, which the Court of Criminal Appeals subsequently modified in a separate proceeding. The Court of Criminal Appeals reduced the fine to $500.00 pursuant to 21 O.S.1991, § 566(A), and ordered the district court to find the exact amount of jury expense to be taxed as a sanction against the attorney. But *Zeigler* is not a case where attorney's fees were awarded upon a conviction of direct contempt of court.

¶ 12 In its reasoning, the Court of Criminal Appeals cited two opinions of this Court, *Winters v. City of Oklahoma,* 1987 OK 63, 740 P.2d 724, and *City National Bank &*

*Trust Co. v. Owens,* 1977 OK 86, 565 P.2d 4, in support of the rule that the court has equitable power to impose sanctions, which may include attorney's fees, even though contrary to the "American Rule." *Zeigler,* 1991 OK CR 25, ¶¶ 11, 12, 806 P.2d at 1134. It is true in *Owens* that this Court affirmed the trial court's decision to award attorney's fees and costs for the oppressive actions of the plaintiff as a matter of the equitable power of the court. *Owens* was an exceptional case. The plaintiff bank had brought a tort action arising out of an automobile accident against the defendants. After several years the case came on for trial. A jury was impaneled and the case was tried for three full days and on the fourth day, after all the evidence and testimony had been introduced, after all the parties had rested, and after the court had prepared instructions, the plaintiff dismissed its case without prejudice. The trial court assessed attorney's fees against the plaintiff and limited the attorney's fees to the amount necessary to compensate the defendants for their wasted trial time and trial preparation time. This Court held that courts have long recognized that attorney's fees may be awarded when an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reason. *Owens,* 1977 OK 86, ¶ 12, 565 P.2d at 7. This is a matter of equity, and is not directly related to a contempt action.

¶ 13 *Owens* was cited as authority for awarding bad faith attorney's fees in *Winters v. City of Oklahoma City,* 1987 OK 63, 740 P.2d 724, where the defendant city was awarded $900.00 in attorney's fees against the plaintiff's attorney when his fourth lawsuit against the City of Oklahoma City was dismissed even though three previous lawsuits against the city based on the same theory of liability had been dismissed. The Court found that the plaintiff's attorney had intentionally filed a governmental tort claim against the city for the fourth time that lacked plausible legal or factual basis under Oklahoma law. *Winters,* 1987 OK 63, ¶ 13, 740 P.2d at 727. This Court reasoned that assessing attorney's fees in the case of bad faith is part of a court's equitable powers that are necessary to the exercise of all its other powers. *Winters,* 1987 OK 63, ¶ 8, 740 P.2d at 726. The equitable powers specified

were the contempt citation, sanctions for abusive litigation such as dismissal for failure to prosecute, and imposition of attorney's fees against a party for bad faith litigation. *Winters,* 1987 OK 63, ¶ 8, 740 P.2d at 726. The Court further observed that had the case been filed two weeks later, 12 O.S.1984, § 2011, would have been applicable, allowing a statutory basis for awarding attorney's fees. *Winters,* 1987 OK 63, ¶ 16, n. 22, 740 P.2d at 728.

¶ 14 The record in this case simply does not support an equitable assessment of bad-faith attorney's fees pursuant to a court's equitable powers such as were affirmed in *Owens* and *Winters.* In examining the partial record in the case at bar, Gibbs alleges frivolous motions, failure to provide documents and information and numerous hearings concerning the contempt citations and an asset hearing. Gibbs attaches Statements of Account to his two applications for sanctions. With no transcript and no specific findings of the trial court, we are unable to ascertain from the Statements of Account attached to Gibbs' applications for sanction, which items the trial court found to be directly related to some sort of oppressive conduct by Easa.

¶ 15 The case at bar is one in which a lawyer, Gibbs, represented himself, as judgment-creditor in a hearing on assets to collect the judgment for his own attorney's fees for $1,661.52. This pro se lawyer has collected $5,000.00 from an appearance bond, various amounts of cash for court costs on different occasions, and four taxi cabs. The record reflects that the judgment debtor may have been represented by two different attorneys at different stages of the post-judgment collection process, but that Gibbs' complaints go to the manner in which Easa represented himself in court. The award of attorney's fees to Gibbs for representing himself in the protracted post-judgment proceedings as sanctions against Easa is not supported by the record, by statute, or by case law. The opinion of the Court of Civil Appeals is VACATED, and the order of September 7, 1995, is REVERSED AND REMANDED for further proceedings consistent with this opinion.

¶ 16 SUMMERS, V.C.J., HODGES, HARGRAVE, OPALA, and ALMA WILSON, JJ., concur.

¶ 17 KAUGER, C.J., concurs in part, dissents in part.

¶ 18 LAVENDER, SIMMS, and WATT, JJ., dissent.

