2002 OK CIV APP 14

**In the Matter of the ESTATE OF Wiley Curtis FIELDS, Deceased.**

**Jeffrey Alan Fields, Plaintiff/Appellant,**

v.

**Curtis Dean Fields, Pam Fields, and Janet Cox, Defendants/Appellees.**

**No. 96046.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 11, 2001.

Gary R. Underwood, Helms & Underwood, Oklahoma City, OK, for Plaintiff/Appellant.

Pete D. Louden, Louden Law Firm, Norman, OK, for Defendants/Appellees.

KEITH RAPP, Judge:

¶ 1 The trial court plaintiff, Jeffrey Alan Fields (Jeffrey), appeals the judgment rendered in favor of the trial court defendants, Curtis Dean Fields (Curtis), Pam Fields (Pam), and Janet Cox (Janet.) [1]

## BACKGROUND

¶ 2 The parties presented a stipulation of the facts to the court.[2] Wiley Curtis Fields (Father) died intestate. His heirs have been determined to be his children, Jeffrey, Curtis, Pam, and Janet.

¶ 3 Father established a number of accounts (bank accounts, retirement account, and certificates of deposit) during his lifetime which provided that they be paid on Father's death to Curtis. These assets were not included in the probate estate. Title 6 O.S. Supp.2000, 901 (B), authorizes "payable on death" forms of account and denominates these accounts a contract between the depositor and the bank, notwithstanding any provisions of Title 84 O.S.1991, 41 57, which pertain to making of a last will.

¶ 4 At some unspecified time, or times, Father told Curtis and Pam that he wanted his assets divided equally among his "kids." Insofar as Pam knew that included Jeffrey. A document signed by Father, but which did not qualify as a last will, was discovered. This document states that Jeffrey is a step-

---

1. Jeffrey filed his action in District Court. It was subsequently consolidated with the probate proceeding of *In re Estate of Wiley Curtis Fields.*

2. The stipulation appears here only as part of Jeffrey's trial brief. The parties' presentations here clearly disclose that they had entered into a stipulation.

son and expresses Father's desire that Jeffrey receive $100.00 and that the other children share equally in his assets.

¶5 After Father's death, Curtis, Pam, and Janet divided the assets equally among themselves and omitted Jeffrey. They believed that they were carrying out their Father's wishes.

¶6 Jeffrey sued to restore the assets to probate and to ultimately share equally with the others. The trial court ruled against him and he now appeals. Subsequently, the trial court awarded attorney fees against Jeffrey on the apparent ground that the action was either in bad faith or frivolous. Jeffrey has amended his appeal to include the attorney fees award.

## STANDARD OF REVIEW

¶7 Probate proceedings are of equitable cognizance. *Matter of Estate of Bartlett*, 1984 OK 9, ¶ 4, 680 P.2d 369, 374. While an appellate court may, and will, examine and weigh the evidence, the findings and decree of the trial court cannot be disturbed unless found to be clearly against the weight of the evidence.

¶8 Whenever possible, an appellate court must render, or cause to be rendered, that judgment which in its opinion the trial court should have rendered. If the result is correct, the judgment will not be reversed because the wrong reason was ascribed as a basis for the decision or because the trial court considered an immaterial issue or made an erroneous finding of fact. Whenever the law and facts so warrant, an equity decree may be affirmed if it is sustainable on any rational theory and the ultimate conclusion reached below is legally correct. Equity will provide complete relief on all issues formed by the evidence regardless of whether the pleadings specifically tendered them for resolution. *In re Estate of Eversole*, 1994 OK 114 at ¶ 7, 885 P.2d 657, 661; *Matter of Estate of Bartlett, 1984 OK 9* at ¶ 4, 680 P.2d

at 374; Briggs v. Sarkey's Inc., 1966 OK 168, ¶ 29, 418 P.2d 620, 624.

¶9 The attorney fee issue here is whether fees may be awarded as a matter of law. The amount and reasonableness of the award have not been challenged. The appellate court has the plenary, independent and nondifferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1.

## ANALYSIS AND REVIEW

¶10 The thrust of Jeffrey's argument here is that the combination of a "payable on death" account and instructions on distribution constitutes an attempt at a testamentary disposition, but absent the requirements for a proper testamentary disposition. However, Jeffrey's Reply Brief seems to argue that Father's oral instructions are the circumstances constituting an attempted testamentary disposition. In any event, the result, according to the argument, is that the accounts must become part of the estate and pass by intestate succession.

¶11 Section 901(B) changed prior law as expressed in *Waitman v. Waitman*, 1972 OK 157, 505 P.2d 171. There, the *Waitman* Court ruled that a payable on death designation did not meet the requirements for a testamentary disposition or of a gift.

¶12 Now Section 901(B), as applicable here, authorizes payable on death designations for bank accounts.[3] The statute expressly exempts these accounts from the provisions of Sections 41–57 of Title 84. Those sections pertain to the capacity to make a last will and the execution requirements for a last will. Jeffrey has not shown, or attempted to show, that Father's designations of Curtis failed to comply with Section 901(B).[4]

¶13 Moreover, Section 901(B) expressly makes the designation a "*contract* between the depositor and the bank that upon the death of the named owner of the account the bank will hold the funds for or pay them to

---

3. Section 901(B) now authorizes designation of more than one beneficiary whereas when the accounts here were established the statute contemplated only one beneficiary designation per account.

4. The Answer Brief states that the parties agreed that the designations were proper, however, that agreement is not otherwise reflected in the appellate record.

the named beneficiary or the estate of the named beneficiary." Here, Jeffrey has not shown that the contract between the bank and Father is in any manner invalid.

¶ 14 Next, Jeffrey, by his argument, is trying to vary the terms of a written contract by use of oral expressions made by only one party to that contract. The agreed facts also do not show whether the oral expressions were made prior to, contemporaneous with, or subsequent to the written contracts between Father and the bank where the deposit was made. Nevertheless, apart from parol evidence issues, a written agreement may only be altered by a contract in writing or by an executed oral agreement. 15 O.S.1991, 237. Jeffrey has not presented any facts to show that the deposit contracts between Father and the bank, where the deposits were made, have been altered.

¶ 15 Finally, Jeffrey asserts that the trial court erred by failing to infer Father's intent to include him as an equal beneficiary. Jeffrey argues that the oral statements to Curtis and Pam, together with the fact that Section 901(B) authorized only single designations prior to Father's death, necessarily lead to the conclusion that he wanted Jeffrey to share also in the accounts. Section 901(B) was amended effective after Father's death to authorize multiple beneficiary designations.

¶ 16 The problem with Jeffrey's contention is that Father's intent is expressed by his contract of deposit. His oral instructions represent a post-death, or testamentary disposition, of property outside the scope of either Section 901(B) or Title 84. Thus, before these oral instructions may have any legal efficacy, they must qualify as a nuncupative will. Jeffrey made no effort to establish Father's statements as a nuncupative will. 58 O.S.1991, 91 92; 84 O.S.1991, 51.

¶ 17 The findings and decree of the trial court are not clearly against the weight of the evidence. Jeffrey has not demonstrated any error of law. Therefore, the trial court's judgment on the merits is affirmed.

**5.** This Court finds that it is not necessary to discuss whether 12 O.S.1991, 2011, has modified *Owens* and whether that statute's procedure governs pressing claims in bad faith. *See Gorst v. Wagner*, 1993 OK 50, 865 P.2d 1227, holding that

¶ 18 The motion for attorney fees by Curtis, Pam, and Janet relies upon *City National Bank & Trust v. Owens*, 1977 OK 86, 565 P.2d 4. This case recognized that attorney fees may be awarded when an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reason and such award is an exception to the American Rule. The theory of fee shifting, however, is based on equitable considerations which afford to the courts power to award attorney fees despite the fact that such an award is not authorized by statute or contract. *Booker v. Sears Roebuck & Co.*, 1989 OK 156, ¶ 3, 785 P.2d 297, 298.

¶ 19 Curtis, Pam, and Janet look to the "bad faith" exception as the basis for their claim. The fact that Jeffrey relied at trial on *Waitman v. Waitman* was used in support of the argument that Jeffrey's action was in bad faith and entirely without merit. Additionally, they argue that Section 901(B) is a plain and simple statute which dictates the outcome here without any reasonable dispute.

¶ 20 Bad faith as defined in *York v. Fields*, 1992 OK 15, ¶ 6, 846 P.2d 360, has not been demonstrated here. In *York* the elements of bad faith were stated to be actions of a vexatious or oppressive nature or which abuse the judiciary or wastes public revenue, or it serves only to delay. However, bad faith also comes about when a party brings litigation without any reasonable basis for believing that the party has a valid claim.

¶ 21 Rulings under 12 O.S. Supp.2000, 2011 provide an analogy.[5] In *Warner v. Hillcrest Medical Center*, 1995 OK CIV APP 123, ¶ 15, 914 P.2d 1060, 1065, this Court stated:

As we interpret § 2011 and the caselaw regarding sanctions, we must make an objective determination as to whether Wilkinson had a reasonable basis to include a particular defendant and then determine whether, if such an initial basis existed, there was sufficient evidence produced during the course of discovery to keep the defendant in the lawsuit. In light of the

*Owens* had been modified by an Act of the Legislature, 23 O.S. Supp.1986, 103; *see also Gibbs v. Easa*, 1998 OK 55, ¶ 13, 998 P.2d 583, 586, discussing the potential application of Section 2011 had it then been in effect.

cases set out above, it is not relevant to our analysis whether Wilkinson successfully proved his allegations at trial, or whether he was even able to introduce evidence at trial in support of such allegations. Our concern is whether the attorney had a reasonable, objectively ascertainable basis to file and maintain the allegations made against the defendants. If at any point in this inquiry we find either that Wilkinson had no reasonable basis in fact or law to initially file the claim, or that after filing the claim he could not produce evidence which would reasonably support the continuation of the claim, we will not hesitate to affirm the trial court's imposition of proper sanctions. However, we will not uphold sanctions for ineffective or even poor presentation of an otherwise viable claim. Sanctions are not penance for the sins of being on the losing side of a ruling or presenting a novel theory of recovery if it is supported by a good faith argument for the extension, modification or reversal of existing law.

¶ 22 Here, Jeffrey was determined to be an heir and child of Father. Pam and Curtis agreed that Father wanted his assets to go to the "kids" and Pam appears to have assumed that this included Jeffrey. The children, other than Jeffrey, did divide the accounts in question three ways with the apparent purpose of furthering their Father's wishes. For these reasons, this Court cannot find that Jeffrey's case falls within the class of cases that would constitute "bad faith" as that term is used in *Warner*. "The defendant seeking fees must not only prevail on the merits, but must also show plaintiff pursued the litigation in bad faith or brought a frivolous, unreasonable, or groundless action...." *Warner* 1995 OK CIV APP 123 at ¶ 10, 914 P.2d at 1064. Therefore the judgment of the trial court awarding attorney fees is reversed.

¶ 23 AFFIRMED IN PART AND REVERSED IN PART.

¶ 24 STUBBLEFIELD, P.J., and TAYLOR, J., concur.