2007 OK CR 41

David AUTRY, Appellant

v.

The STATE of Oklahoma, Appellee.

No. M–2005–7.

Court of Criminal Appeals of Oklahoma.

Nov. 2, 2007.

---

Mark Henricksen, Oklahoma City, OK, attorneys for defendant Autry at trial.

Pattye High, Assistant District Attorney, Oklahoma County, Oklahoma City, OK, attorney for state at trial.

Garvin A. Isaacs, Nancy A. Zerr, Oklahoma City, OK, attorneys for defendant/appellant Autry at trial and on appeal.

W.A. Drew Edmondson, Attorney General, Oklahoma, Seth S. Branham, Assistant Attorney General Oklahoma City, OK, attorneys for appellee on appeal.

Michael R. Wilds, Broken Arrow, OK, Vice President, Oklahoma Criminal Defense Lawyers Association, Amicus Curiae.

### *SUMMARY OPINION*

A. JOHNSON, Judge.

¶ 1 Appellant, David Burnham Autry, an attorney and member of the Oklahoma Bar, was held in direct contempt of court, in violation of 21 O.S.2001, § 565.1, in Case No. CF–1998–2944, in the District Court of Oklahoma County by the Honorable Tammy Bass–Jones, District Judge. The matter was transferred to the Honorable Susan P. Caswell, District Judge, who, after a hearing, found Autry in direct contempt and ordered him to pay a $500.00 fine, plus the amount of $13,147.50 as costs to the State resulting from his conduct. The trial court stayed

enforcement of this order pending resolution of this appeal.

### The Facts

¶ 2 We limit the facts to those sufficient to provide a cautionary tale to practitioners.

¶ 3 Autry represented, and had for a number of years, a defendant whose conviction of capital murder had been reversed on appeal. The incident leading to Autry's conviction here happened at the beginning of that defendant's retrial on the same charge.

¶ 4 Autry believed certain evidence clearly tended to exculpate the defendant, and was admissible at trial.[1] He appropriately raised that issue during pretrial hearings. The trial judge disagreed. The ensuing discussions between defense counsel and the trial judge were heated but quite clear. The trial judge ruled the evidence inadmissible. Autry told her that, nonetheless, he intended to let the jury know about it. In response, the judge advised him to bring his toothbrush or his checkbook because she would hold him in contempt of court.

¶ 5 The judge did leave a small opening in the finality of her ruling, however. She suggested there might come a time during trial when, in light of the proceedings, she would reconsider her negative ruling and allow the evidence to come in.

¶ 6 The capital murder trial began and a qualified jury was seated. The State made its opening statement followed immediately by Autry's opening for the defense. Nearing the close of his statement, he began to tell the jury about the disputed evidence, revealing as much as he could before he was stopped. The State objected. The judge exclaimed, "Hello!" Mr. Autry continued his exposition, briefly. The judge, loudly, directed him to "close your mouth" and approach the bench. This small drama was played out in front of the jury, and was the last they would see of this murder case.

¶ 7 After a discussion in chambers, the court declared a mistrial "based upon the conduct and the incidents that happened in

Mr. David Autry's opening statement," and held him in direct contempt of court.

¶ 8 The contempt matter was reassigned from Judge Bass–Jones to District Judge Susan Caswell who, after a hearing, found Autry in direct contempt of court in violation of 21 O.S.2001, § 565.1(B)(1) and (2). Judge Caswell specifically found that (1) Defendant's discussion of the evidence in dispute during opening statement was disruptive conduct during the trial and was willfully contemptuous; and (2) Defendant's discussion of that evidence had been preceded by a clear warning that such conduct was impermissible and that Defendant would be held in contempt if he violated the Court's ruling.

### I.

### The Nature of Direct Contempt

¶ 9 Mr. Autry raises a number of procedural issues most of which are not applicable to the matter of direct contempt; others are not supported by the record. We have reviewed all of these complaints and find none with merit.

¶ 10 The power of a judge to impose significant punishment for direct contempt of court immediately and without the full panoply of due process rests upon the absolute necessity of maintaining a structured order in our courts. In this state, that power is defined and limited by 21 O.S.2001, §§ 565, 565.1 and 567, and 21 O.S.Supp.2002, § 566. Section 565.1 provides:

A. The trial judge has the power to cite for contempt anyone who, in his presence in open court, willfully obstructs judicial proceedings. If necessary, the trial judge may punish a person cited for contempt after an opportunity to be heard has been given.

B. Censure shall be imposed by the trial judge only if:

1. it is clear from the identity of the offender and the character of his acts that disruptive conduct is willfully contemptuous; or

---

1. There is no need to identify the particular evidence at issue. Whether the trial judge was wrong is not relevant here. She had clearly announced her ruling.

2. the conduct warranting the sanction is preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition.

C. The trial judge, as soon as practicable after he is satisfied that courtroom misconduct requires contempt proceedings, should inform the alleged offender of his intention to institute said proceedings.

D. Before imposing any punishment for contempt, the judge shall give the offender notice of the charges and an opportunity to adduce evidence or argument relevant to guilt or punishment.

E. The judge before whom courtroom misconduct occurs may impose appropriate sanctions including punishment for contempt. If the judge's conduct was so integrated with the contempt that he contributed to it or was otherwise involved or his objectivity can reasonably be questioned, the matter shall be referred to another judge.

The process accorded Mr. Autry in this case goes well beyond that required by law.

¶ 11 Contrary to his claims, he had clear notice of the charge against him: (1) he had been clearly warned of the consequences of violating the court's order in limine as required by § 565.1(B)(2); (2) he was not entitled to a written charge of direct contempt;[2] and, (3) Judge Caswell considered the same conduct Judge Bass–Jones had earlier identified as contemptuous. Further, he was not entitled to be proved in direct contempt beyond a reasonable doubt.

■ ¶ 12 Mr. Autry is not a criminal defendant and not entitled to those due process rights which otherwise would be his unquestioned due. The matter of direct contempt of court is *sui generis* in nature.[3] There is no requirement of proof of specific elements to be measured quantitatively against a set standard such as beyond a reasonable doubt.

¶ 13 In effect, a judge who finds an individual's conduct contemptuous is taken at her

word as to the fact of the conduct, and may summarily punish for direct contempt because the personal knowledge of the judge substitutes for evidence.

## II.

### Standard of Review

¶ 14 This Court long ago set forth the appropriate standard of review in cases of direct contempt:

Here on appeal the facts would not be reviewed. Only questions of law would be considered. As said at page 444 of 12 Am.Jur., Section 78: "A statement filed by a judge as to matters occurring before him is usually regarded as importing absolute verity."

*Young v. State,* 1954 OK CR 105, ¶ 43, 275 P.2d 358, 369–70 (citations omitted) (*overruled on other grounds by Gilbert v. State,* 1982 OK CR 100, ¶¶ 18–19, 648 P.2d 1226, 1230–31).

■ ¶ 15 The dispositive question before us is whether Mr. Autry's conduct constituted direct contempt of court under the circumstances presented here. That is a question of law and our review is *de novo.*

## III.

### Appellant's Conduct Constituted Direct Contempt

■ ¶ 16 Autry and Amicus Curiae argue that his conduct was not direct contempt. In brief summary, their argument comes down to these points:

1. Autry's conduct does not fall within the narrow prohibition of the statute defining direct contempt; to convict him of direct contempt under these circumstances is unfair and an unconstitutional deprivation of due process.

2. The Court's ruling that the exculpatory evidence was inadmissible was not absolute, and defense counsel did no wrong in attempting to tell the jury

---

**2.** There is no such statutory requirement. *See Brown v. State,* 1986 OK CR 151, ¶ 4, 728 P.2d 494, 496, holding a direct contemnor has no right to a written accusation.

**3.** *Brown,* 1986 OK CR 151, ¶ 4, 728 P.2d at 495–96; *Gilbert v. State,* 1982 OK CR 100, ¶ 19, 648 P.2d 1226, 1231.

about it once the prosecution opened the door.

3. A single incident of disobedience to an order that was, at least, arguably wrong, should not be sufficient to justify a conviction for direct contempt.

4. The admission of the evidence in question was both legally justified and vital to his client's getting a fair trial; his duty as a zealous advocate for his client required that he act as he did.

¶ 17 We consider each argument in turn.

1. It is true that a casual observer of the court proceedings might have detected nothing inappropriate or out of the ordinary in Mr. Autry's tone or posture as he began to tell the jury about the prohibited evidence and might have been surprised by the eruption of protest that followed. Nonetheless, Autry's conduct was both disruptive and willfully contemptuous. It is a clear, indeed an audacious, example of direct contempt in light of the Court's order forbidding that precise conduct.[4]

2. Mr. Autry's position that he reasonably assumed he could tell the jury about the evidence in response to the prosecutor opening the door would be more persuasive if his address to the jury had not been preceded by his deliberate and repeated assurances to the Court that he intended to defy the order, indeed that he specifically intended to refer to the evidence in his opening statement. As a matter of common sense, as well as law, the circumstances here required counsel to approach the bench to allow the Court to reconsider the negative ruling.[5]

3. That the Court's order in the case may have been wrong is simply not relevant.

Wrong or not it was the order of the Court. The necessity of obedience to the orders of the trial court does not presume agreement therewith; nor is it relevant that the violation was not repeated. There is no one free bite rule in the law of contempt. Mr. Autry's statement to the jury was neither a slip of the tongue, nor an outburst made in an unguarded moment of passion. It was made in cool, calculated, contemptuous defiance of the Court's authority and with full awareness of the potential consequences.

4. Autry attempts to justify his conduct here as required by the tenet that a lawyer owes his client zealous advocacy. He misapprehends the limits of that principle. To identify the potentially exculpatory evidence here, to research the issue well, to bring it skillfully and persuasively to the attention of the trial court was zealous advocacy. To defy the Court's order in front of the jury was simply bad behavior and direct contempt of court.

## IV.

### *The Assessment of Jury Costs*

¶ 18 In addition to the imposition of a $500.00 fine against him, the Court ordered Autry to pay $13,147.50 in jury expenses. We have no reason to doubt the correctness of that amount nor does Appellant dispute the actual calculation of the cost of calling, qualifying, and seating this jury, only to have it dismissed at the beginning of trial.

¶ 19 Appellant argues that his punishment here exceeds that allowed by law.[6] The purpose of requiring a contemnor to pay costs is not punishment but a form of restitution to the court for the damage he caused.

---

4. Amicus Curiae argues that, at best, the contempt charge here is a cobbled together entity with parts of both indirect and direct contempt-a hybrid. That argument misapprehends the nature of direct contempt which includes all willfully contemptuous behavior in the presence of the court-including the violation of a pre-existing order.

5. *Vanscoy v. State*, 1987 OK CR 50, ¶ 12, 734 P.2d 825, 828, " 'When a motion in limine is sustained, the party seeking to introduce the evidence must, at trial, but out of the jury's hearing, make an offer of proof as to what the testimony

would be in order to afford the trial court an opportunity to make a final ruling on the evidence' " (quoting *Kaiser v. State*, 1983 OK CR 156, ¶ 6, 673 P.2d 160, 162).

6. 21 O.S.Supp.2002, § 566(A) Unless otherwise provided for by law, punishment for direct or indirect contempt shall be by the imposition of a fine in a sum not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail not exceeding six (6) months, or by both, at the discretion of the court.

For that reason the order directing payment of costs does not exceed the punishment allowed. On the other hand, for the same reason the costs must be meaningfully tied to the damage done.[7]

¶ 20 The murder trial underlying this contempt proceeding was never retried. Because the defendant entered a plea of guilty, no second jury was ever called to start the trial anew. While Autry's conduct could have cost the Court $13,147.50 in additional and wasted jury resources, in fact it did not. For that reason, the assessment of costs cannot stand.

### DECISION

¶ 21 The Judgment of the Trial Court in finding Autry guilty of direct contempt is **AFFIRMED.** The Sentence fining Autry $500.00 is **AFFIRMED.** The order directing payment of costs in the amount of $13,147.50 is set aside and held for naught. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2007), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LUMPKIN, P.J., concurs in part, dissents in part.

C. JOHNSON, V.P.J., CHAPEL, P.J. and LEWIS, J., concur.

LUMPKIN, Presiding Judge, concurs in part/dissents in part.

¶ 1 I concur in the decision and analysis by the Court on the issue of contempt. However I must dissent to the Court's discussion of the assessment of costs in this case. This issue was previously decided in *Zeigler v. State,* 1991 OK CR 25, 806 P.2d 1131.

¶ 2 The Court misapplies *Zeigler* to somehow think there must be a second trial before the costs of impaneling a jury can be assessed. That is not the requirement of *Zeigler,* and would be impracticable to apply since in all contempt citations the Court would have to wait in assessing punishment until it determined if another trial would be held. Whether or not a second trial is held is not the issue. The fact is this jury, and the cost

incurred, was impaneled for this trial which, because of Appellant's actions, was declared a mistrial. As we said in *Zeigler,*

> We would agree that jury costs are generally the expense of maintaining the system of courts, but in this case, the expense was caused by the contempt of the appellant and had nothing to do with maintaining the system. This is a case where appellant's contempt was the cause of the expense that he should bear.

1991 OK CR 25, ¶ 6, 806 P.2d at 1135.

¶ 3 The same principle applies in this case and the Court should consistently apply our previous holding in *Zeigler* to the facts of this case. The costs in this case are directly related to the actions by Appellant which constituted the contempt.

¶ 4 I would follow *Zeigler* and affirm the judgment and sentence.

---

7. *Zeigler v. State,* 1991 OK CR 25, ¶ 15, 806 P.2d 1131, 1135.