2008 OK 104
IN THE MATTER OF J.H., S.H. AND J.H., DEPRIVED CHILDREN, AND
KRISTINA EASTERDAY AND ANTHONY HACKWORTH, Appellants,
v.
HONORABLE RICHARD KIRBY, JUDGE OF THE DISTRICT COURT OF OKLAHOMA COUNTY, Appellee.
No. 105304
Supreme Court of Oklahoma
December 9, 2008
Sherry J. Neal, Oklahoma City, for Appellants
W.A. Drew Edmondson, Attorney General, Tricia Everest, Assistant Attorney General, Oklahoma City, for Appellee
Robert A. Ravitz, Public Defender of Oklahoma County, William R. Hauser, Benjamin C. Brown, Assistant Public Defenders, Oklahoma City, Amicus Curiae
EDMONDSON, V.C.J.
¶1 The issue in this case is whether a positive drug test alone supports the trial court's finding that appellants were in direct contempt of court. Upon certiorari previously granted, we answer in the negative. We vacate the Court of Appeals' decision, and reverse the trial court's order.
¶2 The relevant facts are not in dispute. Appellants are the parents of three children who were adjudicated deprived and placed in the custody of the Department of Human Services in 2006. As part of their treatment and service plan for regaining custody, appellants agreed to be tested for the presence of drugs and alcohol. At a hearing before Judge Kirby in July 2007, the court was advised that both parents had tested positive for the presence of cocaine.
¶3 As a result, Judge Kirby verbally ordered appellants not to appear in his court again with alcohol or illegal drugs "in their systems," warning them they would be subject to a proceeding for direct contempt of court if they did so. The parents verbally expressed their understanding. A full written version of the notice, signed by Judge Kirby, is in the record. Appellants did not sign the notice to indicate their receipt and/or understanding of the warning. That notice appears to be a form created for the court's use in deprived cases.
¶4 On October 25, 2007, appellants appeared for a scheduled pretrial conference, prior to which and at the request of the Department of Human Services, they had willingly submitted to drug screening tests. The request was routine, made because of appellants' past history of drug abuse. Appellants had not exhibited disorderly or unruly behavior before the hearing and they did not do so during the hearing. They did not obstruct or disrupt the proceedings, nor were they disrespectful. It is not argued that appellants were under the influence of cocaine such that they were disruptive or that their functioning was impaired, and there is no indication otherwise in the record.[1]
¶5 Once Judge Kirby received appellants' test reports, he immediately conducted a direct contempt hearing. No witnesses were called and, based solely on the positive results of the drug tests taken earlier, he summarily found appellants in direct contempt and sentenced them to two days in the Oklahoma County jail. No testimony established the validity or accuracy of the tests.
¶6 Appellants' attorney objected to the proceeding and argued to Judge Kirby, as she does on appeal, that appellants' conduct did not come within the statutory definition of direct contempt and that appellants' alleged violation of the court's existing order, resulting from the ingestion of drugs taken outside the court, could only be viewed as a possible indirect contempt of court. She asked for a jury trial, to which her clients would be entitled in an indirect contempt proceeding, and asked that a different judge hear the matter. Her requests were denied.
¶7 The appellants apparently served their contempt sentences in full; however, we find this case is not moot as this is a situation that is likely to recur yet evade review. This exception is recognized to apply in matters where (1) the challenged action is too short in duration to be fully litigated prior to its cessation, and (2) there is a reasonable expectation that these parties would be subjected to the action again. In re Mental Health of D.B.W., 1980 OK 125, 616 P.2d 1149, 1151.
¶8 In Oklahoma, the power of contempt is derived from our constitution. Contempts are defined and limited by the constitution and statutes, which have superseded the common law and set forth a complete and all-inclusive definition of contempts. Best v. Evans, 1956 OK 119, 297 P.2d 379, 381; Fulreader v. State of Oklahoma, 1965 OK 187, 408 P.2d 775, 779. We have long recognized that because our statutory definition of contempt is penal in nature, it cannot be enlarged by implication or extended by inference. Best v. Evans, Syllabus by the Court, ¶ 3, at 379.
Article II, § 25 of the Oklahoma Constitution provides:
"The legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the State shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given.
¶9 Pursuant to that mandate, our legislature has defined and limited contempts in 21 O.S. 2001§ 565, as follows:
Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court.
¶10 This Court has further construed "disorderly and insolent behavior" as conduct before the court which is "unruly, tumultuous, insulting or disrespectful." Best v. Evans, 297 P.2d at 379; Fulreader v. State of Oklahoma, 408 P.2d at 779.
¶11 The power of the court to summarily impose significant punishment, including imprisonment, for direct contempt in the absence of those usual protections afforded an accused by statutes and constitutional guarantees of due process, rests upon the absolute necessity of maintaining structured order in our courts. Autry v. State of Oklahoma, 2007 OK CR 41, 172 P.3d 212, 214. In consideration of this extraordinary power placed in the judiciary, the Court of Criminal Appeals recognized in Gilbert v. State of Oklahoma, 1982 OK CR 100, 648 P.2d 1226, 1232, that it is a matter of "critical importance" that all acts or essential elements making up the alleged direct contempt must occur in the immediate presence of the court in session as required by statute, and there can be no finding of direct contempt where only some of those acts occur in the court's presence. That Court noted this requirement is "in accord with Oklahoma's rejection of common law definitions of contempt, as well as the well-accepted rule that statutes imposing penal sanctions should be strictly construed [and] also in keeping with the trend in recent years toward viewing summary contempt with disfavor and narrowly restricting its use." Id. at 1232.
¶12 The power of the trial judge to summarily impose punishment for direct contempt is limited by the provisions of 21 O.S.2001 § 565.1, as follows:[2]
A. The trial judge has the power to cite for contempt anyone who, in his presence in open court, willfully obstructs judicial proceedings. If necessary, the trial judge may punish a person cited for contempt after an opportunity to be heard has been given.
B. Censure shall be imposed by the trial judge only if:
1. it is clear from the identity of the offender and the character of his acts that disruptive conduct is willfully contemptuous; or
2. the conduct warranting the sanction is preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition.
C. The trial judge, as soon as practicable after he is satisfied that courtroom misconduct requires contempt proceedings, should inform the alleged offender of his intention to institute said proceedings.
D. Before imposing any punishment for contempt, the judge shall give the offender notice of the charges and an opportunity to adduce evidence or argument relevant to guilt or punishment.
E. The judge before whom courtroom misconduct occurs may impose appropriate sanctions including punishment for contempt. If the judge's conduct was so integrated with the contempt that he contributed to it or was otherwise involved or his objectivity can reasonably be questioned, the matter shall be referred to another judge.
¶13 We reject appellee's contention that his judgment of appellants' direct contempt by reason of his July warning is supported by §565.1(B)(2). That argument ignores the essential fact that §565.1 is concerned with punishment of a person whose conduct is contemptuous; that is, a person who, in the judge's "presence in open court, willfully obstructs judicial proceedings." This is not the situation before us. The record of the October 25, 2007, hearing does not reveal any conduct by appellants constituting direct contempt as defined by our statutes. There is no evidence that they were disorderly or insolent or that they disturbed or willfully obstructed the judicial proceedings. Section 565, which defines contempts based upon actual behavior, does not include the presence of chemicals in blood or urine as a statutory category of summarily punishable conduct. Appellee's prior warning did not convert it otherwise.
¶14 Certainly, if an intoxicated or drugged person engaged in acts of disorderly or insolent behavior during a session of court or interrupted its proceedings, he or she could be held in direct contempt of court. But, in the absence of behavior within the statutory definition, an individual may not be held in direct contempt.
¶15 We find that appellants are correct that there was no basis here for a finding of direct contempt of court and they are also correct that the proper charge, if any, which could have been brought against them for the alleged October violation of the court's July order is that of indirect contempt.[3]
¶16 To support a judgment of indirect contempt, §565 requires proof of willful disobedience of or resistance to process or lawful order of the court. Unlike direct contempt, the procedure governing punishment for indirect contempt is quite detailed and offers more protection to the accused. Title 21 O.S. 2001 §567 requires " the party charged with contempt shall be notified in writing of the accusation and have a reasonable time for defense; and . . . shall, upon demand, have a trial by jury." The section also directs the court to set an appearance bond and set the case for trial at the next jury term.
¶17 Additionally, there is a specific juvenile court statute governing the resolution of this question which was ignored and violated by the trial court's action. Title 10 O.S. 2001§7003-8.3 provides:
A willful violation of any provision of an order of the court issued under the provisions of this Code shall constitute indirect contempt of court and shall be punishable as such. Punishment for any such act of contempt shall not exceed a fine of Three Hundred Dollars ($300.00), or imprisonment in the county jail for not more than thirty (30) days, or both such fine and imprisonment.
¶18 In Henry v. Schmidt, 2004 OK 34, 91 P.3d 651, 656, we held that when a trial court imposes a penal, rather than remedial, sanction in an indirect contempt proceeding, federal due process protections, in addition to state statutory and constitutional protections, attach. Those rights include the right to a jury trial, which may be waived only upon a clear showing of knowing and competent waiver, and the requirement of proof beyond a reasonable doubt. The trial court thus failed to afford appellants federal as well as state constitutional and statutory rights.
¶19 No member of this court would condone appellants' use of illegal substances, or condone their appearance in court after having taken those substances. However, a positive drug test result alone is not a sufficient basis to sustain a finding of direct contempt under our statutes. The trial court's order does not conform to the law and denied appellants' constitutional and statutory protections. We therefore vacate the opinion of the Court of Civil Appeals and reverse the trial court's judgments against these appellants.
¶20 EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, COLBERT, REIF, JJ.  Concur
¶1 WINCHESTER, C.J., dissenting:
¶2 I respectfully dissent. The Judge's contempt ruling did not rest on the parents' illegal drug use outside the courtroom. Rather the parents were cited for appearing in open court with illegal drugs in their system despite the Judge's clear forewarning not to do so. So appearing, the parents thwarted the judicial process leaving the Judge with no choice but to terminate the proceedings. The parents' contemptuous conduct lengthens the duration of their children's stay in foster care and further delays resolution of the custody rights. Under such circumstances, the Judge was well within his rights to issue an order of direct contempt.
¶1 TAYLOR, J., Dissenting
¶2 I dissent. These parents of deprived children have appeared in the courtroom more than once either having failed or refused drug tests. Their drugs of choice are amphetamines and cocaine. After these drug-influenced courtroom appearances, the trial judge ordered them to never appear in his courtroom in such a condition.
¶3 They did it again. After the judge's order, they appeared in the courtroom for a very important judicial proceeding involving the best interest of their children. At this crucial appearance in the courtroom, both parents were drugged with cocaine. Standing in the courtroom, in a judicial proceeding to determine the best interests of their children, while enjoying the mind-altering effects of cocaine is clearly "disorderly or insolent behavior committed during the session of the court and in its immediate view."
¶4 The majority opinion points to the law that defines "disorderly and insolent behavior" as "unruly", "insulting" and "disrespectful". Appearing in the "immediate view and presence" of the court drugged-up on cocaine is absolutely "unruly", "insulting" and "disrespectful" to the court. The conduct of these parents in this courtroom was clearly obstructive, disrespectful and insulting to the court and the judicial process that was seeking the best interest of these children. Being drugged on cocaine is "conduct" in the courtroom which is obstructive and it is "actual behavior" that would certainly shut down the trial process.
¶5 The majority opinion refers to a juvenile court statute and its indirect contempt provisions. That is not relevant. The order to not come to court under the influence of drugs was not issued pursuant to any juvenile court statute. It was a general order focused upon the subject of behavior in the courtroom that could have been issued in any type of judicial proceeding.
¶6 The trial judge and the Court of Civil Appeals were precisely correct in this matter. The trial judge should be commended for demanding immediate and absolute respect for the honor of the courtroom. The judge was correct to absolutely and immediately enforce his order as to behavior in that sanctuary of justice.
NOTES
[1] We note that the opinion of the Court of Appeals determinedly portrays appellants as appearing before the trial court while "under the influence" of cocaine, stating four times that they were "under the influence" after having been warned that an appearance "under the influence" would be grounds for direct contempt of court. It goes without saying that "under the influence" is a well known legal phrase with a definite and significant legal meaning. This characterization of appellants' conduct by the Court of Appeals is an erroneous account of the record .
[2] These guidelines in very similar form were first formally adopted by this Court from the American Bar Association Standards for trial judges with respect to the exercise of the power of direct contempt in Young v. Woodson, 1974 OK 54, 522 P.2d 1035, 1039, as a court procedural rule. We explained there that the standards, with slight adaptation, were reconciled with Oklahoma's sui generis characterization of the direct contempt power and our constitutional requirement of an opportunity to be heard before imposition of punishment for direct contempt.
[3] For decisions so holding under similar facts, see, M.W. v. Lofthiem, (Fla.2d DCA 2003) 855 So. 2d 683 (evidence that juvenile tested positive for marijuana and admitted to its use within the past week prior to appearing in court does not constitute direct contempt where defendant was not under the influence so that his conduct was disruptive nor did he hinder administration of justice; in absence of existence of valid court order prohibiting such use, indirect contempt would not lie and trial court had also failed to follow those procedures required for indirect contempt); Cameron v. Maryland, 102 Md. App. 600, 650 A.2d 1376 (results of breath alcohol test solely do not support judgment of direct criminal contempt where defendant did not engage in contemptuous conduct or possess contumacious intent).